NEW-YORK, May, 1821.

MILLS v. MARTIN.

Judgment for the defendant.

## MILLS *against* MARTIN.

THIS was an action of replevin for a pair of oxen, taken by the defendant from the close and possession of the plaintiff. The defendant avowed and justified the taking, as deputy marshal of the *United States,* and acting under a certificate signed by General *Steddiford,* as president of a general court martial, for collecting a fine of sixty-four dollars,

Courts Martial are courts of special and limited jurisdiction; and where a defendant justifies under the judgment and process of such a Court, he must show affirmatively, that the

Court had jurisdiction. If the Court had no jurisdiction, its proceedings being void, *trespass* lies.

So *replevin* lies, for the property of the plaintiff, taken under a warrant issued by such a Court

The *militia* of the several states are not subject to *martial law,* unless they are in the actual service of the *United States.*

The acts of Congress, in regard to the militia, and establishing rules and articles of war, relate only to the government, trial, and punishment of officers and soldiers in the actual service and employment of the *United States* : they are not applicable to the case of a militia man who refuses to obey the orders of the governor or commander in chief of a state, issued in compliance with the *requisition* of the president of the *United States,* for calling out a certain portion of the militia, and who had not rendezvoused, or been mustered, and in the pay of the United States ; and the act of the 18th of *April,* 1814, expired with the termination of the late war. The *militia* man, in such a case, is not therefore amenable to a court martial of the *United States* ; but only to a court instituted under the authority of the state government.

Where, in an action of *replevin,* the defendant, being the deputy marshal of the *United States, avowed* and justified the taking of the plaintiff's goods, by virtue of warrant issued to the marshal of the district, to collect a fine imposed on him by the judgment of a court martial, described as " A General Court Martial composed of officers of the militia of the state of *New-York,* in the service of the *United States,* (*six* in number, and naming them) duly organized and convened, by general orders, issued pursuant to the acts of Congress of *February* 28, 1795, and of *February* 2, 1813, for the trial of those of the militia of the state who had failed, neglected, or refused to rendezvous and enter the service of the *United States,* in obedience to the orders of the commander in chief of the militia of the state of *New-York,* of the 4th and 29th of *August,* 1814, issued in compliance with the requisition of the President of the *United States,* made pursuant to the acts of Congress of *February* 28, 1795, *February* 2, 1813, and *April* 18, 1814," and alleging that the plaintiff, being a private in the militia, neglected or refused to rendezvous, and on the 16th of *May,* 1818, was regularly tried by the said General Court Martial, and duly convicted of the said delinquency, &c. *Held,* that the *avowry* was bad, not only because the court martial had no jurisdiction of the case, but because, (1) it was composed of *six* officers only, instead of *thirteen,* without showing that any emergency existed, which rendered a less number necessary ; (2) because the reference to the acts of Congress, under which the Court was said to be organised, was too general ; (3) because the avowry did not aver *by whom* the *general orders* were issued; and, (4) because it did not state that the proceedings of the Court Martial were reported to the officer appointing the Court, and were confirmed by him, before the sentence was executed.

NEW-YORK, imposed on the plaintiff by the said court martial, for having
May, 1821.   failed, neglected, or refused to enter the service of the
MILLS        *United States*, as a soldier in the militia.   The avowry
v.           stated, that " on the 16th day of *May*, 1818, a General
MARTIN.      Court Martial, composed of officers of the militia of the
state of *New-York*, in the service of the *United States*, to
wit: Brigadier General *Steddiford*, President; Lieutenant
Colonel *Beekman Van Beuren*, Lieutenant Colonel *Jonathan
Varian*, Lieutenant Colonel *Benjamin J. Gurnee*, Lieute-
nant Colonel *Michael Smith*, Major *William Wigton*, Mem-
bers, was duly organized and convened by general orders,
issued pursuant to the acts of Congress of *February* 28, 1795,
and of *February* 2, 1813, for the trial of those of the mi-
litia of the state of *New-York*, who had failed, neglected, or
refused to rendezvous and enter the service of the *United
States of America*, in obedience to the orders of the com-
mander in chief of the militia of the state of *New-York*, of
the 4th and 29th of *August*, 1814, issued in compliance with
the requisition of the President of the *United States*, made
pursuant to the acts of Congress of *February* 28, 1795,
of *February* 2, 1813, and of *April* 18, 1814"——" that the
plaintiff, a private in the militia of the state of *New-York*,
did fail, neglect, or refuse to rendezvous, and enter the
service aforesaid, in obedience to the orders aforesaid, is-
sued in compliance with the requisitions aforesaid"——
" that on the 16th of *May*, 1818, at *Poughkeepsie*, in the
county of *Dutchess*, the said plaintiff was regularly tried by
the said General Court Martial, for having failed, neglected,
or refused to enter the service of the *United States* aforesaid,
and was duly convicted by the said court of the said delin-
quency,"——" that thereupon the said General Court Mar-
tial imposed the sum of sixty-four dollars, as a fine on the
said plaintiff, for having thus failed, neglected, or refused
to rendezvous and enter the service of the *United States* of
*America* when thereunto required as aforesaid,"——" that
the said General *Steddiford*, President of the said General
Court Martial, on the day and year last aforesaid, in pursu-
ance to the acts of Congress of *February* 28, 1795, and
*February* 2, 1813, did certify to the marshal of the southern
district of *New-York*, that the sum of sixty-four dollars was

imposed as a fine on the said *Eli Mills*, the plaintiff, for having thus failed, neglected, or refused to enter the service of the *United States*, when thereunto required as aforesaid; and that the said plaintiff was sentenced by the said Court Martial, on failure of payment of the said fine imposed on him, to eight months imprisonment," &c. To this avowry the plaintiff (protesting that *T. M.*, the marshal, did not make a warrant or deputation in writing, &c. and protesting that no such certificate, called a Court Martial certificate, in the proper hand-writing of General *Steddiford*, the President, was directed and delivered to the said marshal, or by him to the defendant) pleaded, that he never neglected or refused to rendezvous and enter the service of the *United States of America*, in obedience to any orders issued by the commander in chief of the militia of the state of *New-York*, issued in compliance with the requisition of the President of the *United States*, nor was the plaintiff ever ordered by the commander in chief of the militia, &c. to enter the service of the *United States*, as one of the militia of the state of *New-York*, nor was the said plaintiff ever amenable to the jurisdiction, or liable to be legally tried by any General Court Martial, composed of officers of the militia in the service of the *United States*, organised and convened by general orders, for the trial of those of the militia of the state of *New-York*, who had failed, neglected, or refused to rendezvous and enter the service of the *United States of America*"——"that he was not among the number of troops called upon to rendezvous and enter the service of the *United States of America*," &c. &c. " and this he prays may be inquired of by the country," &c. To this plea, the defendant demurred, and the plaintiff joined in demurrer.

*Shufeldt*, in support of the demurrer, contended, 1st. That the plea was bad, because the grounds of defence stated were matters as to which the plaintiff was concluded by the decision of the Court Martial. The plaintiff sets up in his defence the very facts which were the proper subject of inquiry before the Court Martial, and on which they have decided. The judgment of that Court is conclusive; and if erroneous, the plaintiff must seek his remedy in the regular

course. (1 *Ld. Raym.* 467. 1 *Salk.* 396. 8 *Johns. Rep.* 159. 10 *Johns. Rep.* 100. 8 *Johns. Rep.* 44. 13 *Johns. Rep.* 158. 1 *Str.* 710. 2 *Term Rep.* 225. *Phillips' Ev.* 260.) An officer executing a regular judgment is not liable to an action. (1 *Caines,* 93. 8 *Johns. Rep.* 69. 9 *Johns. Rep.* 23. 10 *Johns. Rep.* 138. 14 *East,* 159.)

2. The allegation, that the plaintiff was not amenable to the jurisdiction of the Court Martial, is a conclusion of law, not a fact which can be put in issue, to be tried by a jury. (7 *Johns. Rep.* 78. 1 *Chitty Pl.* 520.) This is not the mode in which the jurisdiction of the Court Martial is to be tried. The plaintiff should have appeared before the Court Martial, and made his objection there ; and if the Court decided against him, and he was dissatisfied with the decision, he might have appealed, or sought redress in the regular way.

3. The plaintiff admits, that the goods were taken by virtue of the certificate of the General Court Martial. The goods were, therefore, in the custody of the law, and could not be replevied. (14 *Johns. Rep.* 84. 15 *Johns. Rep.* 401.)

*A. Smith,* for the plaintiff, contended, that the *avowry* was bad ; 1. It does not state by what officer, and of what rank, or under what authority, or at what time, the orders for constituting the court martial were issued. By the articles of war, for the government of the army of the *United States,* (art. 65.) no officer but a general *commanding an army,* or a colonel commanding a separate detachment, are authorized to appoint a General Court Martial. As different officers are assigned to different military districts, within which they are to exercise their respective commands, independent of each other, the *name* of the officer who issued the general orders should have been mentioned, so that it might appear that he was of a rank competent to call a Court Martial, and that he held his command within the military district, in which the delinquents who were to be tried resided. It is true, that the act of the 28th of *February,* 1795, does not specify in what manner General Courts Martial are to be called, but it leaves it for future regulation ; and the act of the 10th of *April,* 1806, " for establishing rules and arti-

cles for the government of the armies of the *United States*," supplies the particulars, and so far controls the act of 1795. Courts Martial, being Courts of inferior and limited jurisdiction, deriving all their authority from special enactments, not from the common law, must pursue their powers strictly; and it must so appear on the face of their proceedings, otherwise their proceedings are *coram non judice.* This is more especially requisite, as this Court was appointed after the offence, and for the express purpose of trying and punishing the offenders or delinquents. (11 *Johns. Rep.* 159. 12 *Johns. Rep.* 265.) It does not appear whether the authority by which the general orders were issued, emanated from the state of *New-York*, or from the *United States.* If the plaintiff was called out by the authority of this state, he was not amenable to the *United States*, until he was *mustered* and had received pay, &c. (*Articles of War*, 97. 2 *H. Bl.* 96.)

Again; the offence alleged is a disobedience of orders in 1814, and the time when the Court Martial was duly organized, so far as it appears, was on the 30th of *May*, 1818. Now, by the 88th article of war, no person can be tried for an offence committed more than two years before the issuing of the order for such trial.

2. The avowry does not set forth the *particular manner* in which the Court Martial was organized, so that this Court might judge whether it was *duly* organized or not, according to law. Where a defendant justifies under a writ, warrant, or any authority whatever, he must set it forth *particularly* in his plea. A general allegation is not enough. (1 *Saund.* 298. n. 1. 5 *Comyn Dig.* 390. *Pleader*, E. 17. 1 *Chitty Pl.* 519, 520. 2 *Chitty Pl.* 238. 546. *Cowp.* 18. 7 *Johns. Rep.* 78. 10 *Johns. Rep.* 372. 2 *Johns. Rep.* 437.) By the 64th article of war, General Courts Martial must consist of *thirteen* officers at least, " where that number can be convened without manifest injury to the service." Though organized in a state of profound peace, when no possible injury could have arisen to the service from having a full number, this Court Martial consisted of *six officers* only, as named in the avowry. Besides, it is not alleged that these six officers were then officers of the militia,

holding commissions of the rank ascribed to them. (*Articles of War*, 95. 97.)

Again; the avowry states, that the Court Martial was duly convened, &c. pursuant to the acts of *February* 28, 1795, and *February* 2d, 1813; but neither of those acts points out the mode in which a Court Martial is to be organized. The only act, except that containing the rules and articles of war, which designates the method of organizing a Court Martial for the trial of the militia, &c. is the act of *April* 18, 1814, which expired with the war. (13 *Cong.* sess. 2.) That this Court Martial was *duly* organized, is the very gist of the defence; and if that does not appear, there is no jurisdiction. (10 *Co.* 76. 5 *Johns. Rep.* 290. 2 *East*, 263. 5 *Comyn's Dig.* 390. (E. 5.) 775. (3 *M.* 23, 24.) *Willes' Rep.* 122. 1 *Salk.* 108.)

3. The avowry does not allege or set forth a competent power and authority in this Court Martial to try and punish, &c. It should show, that the order calling the Court was issued by a *general or colonel*, actually commanding an army or separate detachment; and that the sentence was approved by him. (7 *Johns. Rep.* 78, 79, 80. 9 *Johns. Rep.* 291. *Willes' Rep.* 199. 416.)

4. As the plaintiff was tried for a disobedience to the orders of the Governor of this state, of the 4th and 29th of *August*, 1814, they should have been specially set forth, as the very basis of the authority of the Court, that it might appear whether all the militia called out, were so called in pursuance of the requisition of the President of the *United States*; whether part of them were so called out under the authority and laws of this state only; whether the whole militia of the state, or a part only, were called out; and whether the plaintiff was one of the militia comprehended in the orders.

5. It is not alleged, that the plaintiff was in the service of the *United States*, before, at the time of, or since the orders of the 4th and 29th of *August*, 1814. The act of 1795, and the articles of war, provide only for the militia employed in the service of the *United States*. And the plaintiff, unless he was in the actual service of the *United States*, was not liable to the penalties of disobedience.

6. The avowry does not allege with sufficient certainty, that any requisition was made by the President of the *United States.*

*E. Williams,* same side. (*Oakley,* also, same side.) The *militia* is the state force, and the only force under the power of the state. The authority of the *United States* over this force, is derived from the constitution of the *United States,* and is a delegated power. The President of the *United States* made a requisition of this state, for a certain number of the militia, the whole of which, and more than was required, was promptly furnished; yet, strange as it may seem, there remains a tax, or amount of fines, for supposed delinquencies, to be levied on the citizens of this state, exceeding one hundred thousand dollars, imposed by this Court Martial, acting under the general government.

That it is indispensable, in good pleading, where the defendant justifies under the authority of a Court of inferior jurisdiction, clearly to aver and show the jurisdiction, or such facts from which its jurisdiction must necessarily be inferred, cannot be denied. The plea denies every material allegation in the avowry, and the demurrer admits the facts stated in the plea. The facts which go to the jurisdiction of the Court itself, are put in issue, not those facts merely which were properly traversable before the Court Martial.

Without noticing the various defects in the *avowry,* which have been already mentioned, it appears, that there was not only a defect of jurisdiction, but admitting that the Court had jurisdiction to try the plaintiff, it has exceeded its jurisdiction, by imposing a fine of 64 dollars. By the fifth section of the act of 1795, the pay of a militia man, in actual service, was five dollars per month; and no fine could be imposed beyond the amount of twelve months' pay; and though, by the act of 1814, the pay was increased to eight dollars per month, yet, as that law expired with the war, the act of 1795 alone remained in force. It is manifest, that the Court Martial acted under the law of 1814, which was at an end.

On the face of this avowry, it does not appear, that any law of the *United States* has been violated. It is not set

forth, that the emergency existed, which authorized the President of the *United States*, under the constitution, or the act of Congress, to call out the militia. The avowry states, that the commander in chief, or Governor of this state, issued his orders, pursuant to the requisition of the President of the *United States.* There are two modes of calling out the militia for the service of the *United States ;* by direct command, or by a requisition on the state government. By the act of *February* 28, 1795, the President, in case of invasion, or imminent danger thereof, may call forth such number of the militia as he may judge necessary, and issue his orders to such officer or officers of the militia as he may think proper. The avowry should have shown the order or requisition of the President, and the person to whom it was directed ; we have a right to ask for the judgment of the President of the *United States,* as to the necessity of calling forth the militia, and as to the number required ; and it should appear, that the orders of the Governor were in pursuance of such order or requisition of the President. It does not appear, that the President has ever acted under the authoriy of the act of *February,* 1795, or has issued his orders directly to the officers of the militia. The avowry is, of course, silent as to any such orders, in this case, since none, in fact, were issued. The secretary of the war department, it would seem, issued a circular letter to the Governors of several states, informing them that the President had deemed it advisable, as a measure of precaution, to invite the executives of certain states to organize and hold in readiness for immediate service, a corps," &c. (5 *Wheat. Rep.* 38. note.) Here is no military order or command, which the Governor was bound to obey at his peril. It is merely a respectful invitation to the executive to co-operate with the President in making preparations to repel an attack, in case of invasion. Could the Governor have been cashiered for not complying with this requisition ? Could he have been tried by a Court Martial for disobedience ? And by a Court Martial consisting of inferior officers under him, and whom he might, at any time, deprive of their commissions ? The Governor holds no military commission ; but is, *ex officio,* commander in chief of the militia of the state. How then is a Court

Martial to be organized, to try the Governor of the state, or the commander of the third military district? Such a requisition of the President may be issued at any time, without the existence of any such emergency as is contemplated by the act of 1795. That act does not provide for a requisition; but for *ordering* the militia into direct service. The requisition is merely to have a certain number of troops in readiness, to be subject to the *orders* of the President, to be issued, calling them into actual service. Then where is the law or military order, for a disobedience to which the plaintiff could be tried and fined? Indeed, as Mr. Justice *Johnson*, in the case of *Houston* v. *Moore*, (5 *Wheat. Rep.* 1—42.) has clearly shown, there was no law which gave to any Court jurisdiction over any offence against the act of 1795, unless it was the first section of the act of 1814; for the former act authorized Courts Martial to try and punish those only who were *employed* by the *United States*, or were in actual service; not those who were mustered only, and refused to enter the service. Under the constitution of the *United States*, the general government has no power or authority over the militia of the states, until called into the actual service of the *United States*. The act of the 28th of *February*, 1795, and the articles of war, refer only to Courts Martial to try those militia-men who are in actual service, who are mustered and paid, and who compose, in conjunction with the regular troops, the *army* of the *United States*. How can the plaintiff, who refused to enter the service of the *United States*, and who was not mustered and paid, be considered as belonging to the army of the *United States?* Congress has never provided for such a case. They appear to have relied on the governments of the different states, to have the militia mustered and brought into the field, or into the actual service of the *United States*. A citizen of this state, while he remains one of its militia, owes obedience only to the orders of the commander in chief of the state. He cannot owe obedience to two powers at the same time. Is he to be punished for refusing to transfer his allegiance from the state to the general government? The 68th section of the act to organize the militia of this state, passed

the 29th of *March*, 1809, sess. 32. c. 165. (5 *Webst. Ed. Laws*, 530.) authorizes " the commander in chief of this state, in case of invasion, or other emergency, when he shall judge it necessary, to order out any proportion of the militia of this state, to march to any part thereof," &c. It was under this law, that the Governor issued his orders. Now, can a citizen be subject to two different laws, and to two distinct punishments, for the same act or offence? That, as Mr. Justice *Story* observed, would be something worse than tyranny. In *Houston* v. *Moore*, the writ of error from the Supreme Court of *Pennsylvania*, brought up certain specific questions, which were argued and decided, as to the constitutionality of the law of that state, and the jurisdiction of the Court. It was not an appeal bringing up the whole matter to be discussed and examined. It appears, also, that the law of *P.* made a refusal to serve, when called out pursuant to a requisition of the President of the *United States*, an offence, punishable by a Court Martial. (5 *Wheat. Rep.* 58.)

Again, it is not averred that all the militia of the state, or a part, or what part, were called into the service of the *United States*; nor is it stated that the plaintiff was one of that portion of militia, nor where, or in what county, he was so called out, nor to what corps he belonged. The avowry merely says, that the plaintiff " being one of the militia of the state of *New-York*."

It lies at the very foundation of this avowry, to show that the plaintiff was one of the militia who had rendered himself liable to be tried and punished by this Court Martial. But it is said, that he should have appeared before the Court, and there objected to its jurisdiction. It can never be necessary to object to an inferior Court, its want of jurisdiction. Such a Court proceeds at its peril. "The Court and the officer" who attempts to collect the fine, " are," as Chief Justice *Marshall* said in *Wise* v. *Withers*, (3 *Cranch. Rep.* 331.) " all trespassers: A decision of such a tribunal, in a case clearly without its jurisdiction, cannot protect the officer who executes it." (*Suydam* v. *Keys*, 13 *Johns. Rep.* 444.) Consent does not confer jurisdiction; nor is it to be inferred from the silence of the party. The avowant has

very cautiously avoided mentioning the name of the person
who *ordered* out this militia; but it is perfectly notorious
that the Governor of this state did order out, by virtue only
of his authority as Governor and under the laws of the state,
militia, at the same time, and who rendezvoused at the same
place. Can this Court, then, imagine who ordered the Court
Martial, or by what authority the plaintiff was tried and
fined? The avowry merely says, it was " organized and
convened by *general orders,* issued pursuant to the acts of
Congress," &c. But the person who issued those " gene-
ral orders" is not named. It is impossible to apply the
articles of war to the case of the plaintiff; and it has been
shown that there was no act of Congress which reached his
offence. (5 *Wheat. Rep.* 20. 36. 42. 45.) The Governor, no
doubt, proceeded under the act of 1814; but as that expi-
red, without any saving clause, all duties and powers created
by it ceased. (1 *Wm. Bl.* 451. 4 *Cranch,* 93. 5 *Cranch,*
282. 6 *Cranch* 329.)

Again: the plaintiff was not liable to be tried by any
Court, civil or military, for this supposed offence. No mi-
litia man was liable to be tried after two years from the
time of his alleged delinquency. The offence was commit-
ted in 1814, and this Court Martial was convened in 1818.
It was not necessary to plead the limitation to such a Court, for
no person could be tried after two years. (*Adam* v. *Woods,*
2 *Cranch,* 336.) These being penal statutes, are to be
construed strictly: nothing is to be taken by intendment.
(5 *Wheat. Rep.* 95.)

Again: it does not appear whether the officers compo-
sing the Court Martial were regularly commissioned, or
were merely brevet officers. This was a traversable fact.
(*Wilson* v. *John,* 2 *Binney,* 209.) In 1818, there were no
officers of the militia of this state, in the service of the
*United States.* A trial by *thirteen* officers, unless prevented
by necessity, was an important and valuable privilege, of
which the plaintiff ought not to have been deprived, without
showing in the clearest and most satisfactory manner, that
the exigency existed, which authorized a less number than
thirteen.

If, then, the Court Martial had no jurisdiction, or exceeded

NEW-YORK,
May, 1821.

MILLS
v.
MARTIN.

NEW-YORK,
May, 1821.

MILLS
v.
MARTIN.

its jurisdiction, it will not be denied that they and the officer acting under their authority, were trespassers, and if trespass lies, so will the action of replevin. (1 *Co.* 76. 5 *Johns. Rep.* 290. 1 *Chitty Pl.* 184. 1 *Johns. Cases* 20. 228. 12 *Johns. Rep.* 257. 13 *Johns. Rep.* 441. 7 *Johns. Rep.* 140. 143. 10 *Johns. Rep.* 373. 14 *Johns. Rep.* 87. *Willes,* 672. *n. b.*)

*Van Buren,* in reply : (*Talcot,* same side). For the justification of the avowant, it was necessary to allege only that a Court Martial was duly constituted, having power to try and punish the plaintiff for his delinquency. It was for the Court Martial itself to decide on all those facts which have been objected, and which do not affect the jurisdiction of the Court. The first question, then, is, whether this Court Martial was duly constituted under the laws of the *United States,* and had authority to try and punish ? By the Constitution of the *United States,* Congress has power to call out the militia of the several states, to repel invasion, to suppress insurrection, and to support the laws. Congress, on the 28th of *February,* 1795, passed a law on this subject. Under this act, the Governor issued his *orders* as set forth in the avowry. Will this Court pronounce the proceedings in this case erroneous and void, because the avowry does not state specially, that the President of the *United States* issued his orders ? It is enough that the avowry states that the commander in chief of the militia of this state issued his orders, pursuant to the requisition of the President of the *United States.* But the decision of the Supreme Court of the *United States,* in *Houston* v. *Moore,* (5 *Wheat. Rep.* 1.) has settled the question ; and we may safely rest this case on the decision of that Court. The Governor of the state has no power, of himself, to order the militia into the service of the *United States* ; nor to order a Court Martial to try delinquents.

It was not necessary to set forth in the avowry, the whole history of the powers and acts of Congress, and of the state governments and its officers in relation to the militia.—All matters of form in this avowry are waived by pleading over ; and no objection can be made now, that would not have been good on a general demurrer. Courts are now much less strict

than formerly, in regard to setting out the proceedings of inferior Courts. They overlook all matters of form, in order to come at the real merits. (*Cowp.* 18. 1 *Johns. Rep.* 92.) But even the old cases did not require more than a general averment that the Court had jurisdiction. (*Cro. Eliz.* 489. 8 *Co.* 33. 6 *Mod.* 7. 3 *Lev.* 403. *Willes*, 528. 2 *Ld. Raym.* 1522, 1523.) This general mode of pleading is good, in the first instance, until the opposite party makes his objection. In regard to Courts of Justices of the Peace, it is enough to name the justice, and allege generally that he had jurisdiction. It is not necessary to state that he was duly commissioned, and set forth his commission. The law intends, in regard to such Courts, that they act right, and with authority; and these general allegations are most consistent with that brevity and precision in pleading, which is now practised. It is enough to state the character and situation of the party, the offence for which he was tried, and that the Court had jurisdiction. If a Court is limited by law, as to place, or as to the subject matter, it should be stated accordingly; but where it depends on facts to be proved before the Court, the opposite party should try the question of jurisdiction by plea, or by writ of error. If a Court of Common Pleas should undertake to try and punish for criminal offences, its jurisdiction might be traversed every where, and in every action. Not so, where the Court has cognizance of the subject matter; and whether the particular case comprehended in it is matter of proof. It would be impossible to execute the laws of the *United States*, in regard to the militia, if the doctrine of the plaintiff's counsel is to prevail. Can it be necessary to set out specially the orders of the President of the *United States*, of the Governor, of the general officer, and of every subordinate officer, until we come down to the private? If the Court Martial erred in judgment, that error is not to be tried or corrected in this collateral action. Again, as to the warrant or certificate, unless it should be required to set it forth verbatim, it was sufficiently stated.

It is said that the Court Martial exceeded their power by imposing a fine above the amount of sixty dollars. But the act says he shall forfeit *twelve months pay;* not so much per

month, but according to the pay he actually receives at the time. It was not necessary to allege that the officers who composed the Court Martial were regularly commissioned, or to set forth their commissions. As to the limitation which has been objected, it ought to have been pleaded and tried before the Court below. It is too late to raise the objection here. The date of the offence is not stated in the avowry; nor was it necessary to mention the day. The principles for which we contend in support of this avowry are fully recognised in the case of *Vanderheyden* v. *Young.* (11 *Johns. Rep.* 150.)

PLATT, J. The plea is, undoubtedly, bad; because it attempts to put in issue to the country, facts which were conclusively determined by the sentence of the Court Martial, if that tribunal was legally constituted, and had jurisdiction of the case.

But the demurrer involves the inquiry, whether the defendant's *avowry* is substantially defective?

In examining as to the validity of the avowry, the first question is, whether the delinquency set forth therein, as the ground of conviction, was an offence cognizable by a General Court Martial of the *United States?* The offence, as charged, is, that upon an order from the commander in chief of the militia of this state, issued *in compliance* with the *requisition* of the President of the *United States,* made pursuant to the acts of Congress of the 28th of *February,* 1795, of the 2d of *February,* 1813, and of the 18th of *April,* 1814, the plaintiff being a private in the militia of this state, did fail, neglect, or refuse to rendezvous and enter the service of the *United States.* The act of Congress of the 28th of *February,* 1795, authorizes the President, in case of invasion, or of imminent danger thereof, or when it may be necessary to suppress insurrections, or to execute the laws of the *United States,* to call forth such portion of the militia as he may judge necessary; and to issue his orders for that purpose, to such officer of the militia as he shall think proper. It subjects *the militia employed in the service of the United States,* to the same rules and articles of war as the troops of the *United States;* and declares, " that every

officer, non-commissioned officer, or private of the militia, who shall fail to obey the orders of the President of the United States, in any of the cases before recited, shall forfeit a sum not exceeding one year's pay, and not less than one month's pay, to be determined and adjudged by a Court Martial; and such officer shall, moreover, be liable to be cashiered by sentence of a Court Martial, and be incapacitated from holding a commission in the militia for a term not exceeding twelve months, at the discretion of said Court; and such non-commissioned officers and privates shall be liable to be imprisoned by a like sentence, on failure of payment of the fines adjudged against them, for one calendar month, for every five dollars of such fine." It directs, that Courts Martial for the trial of militia, shall be composed of militia officers only; and that fines shall be certified by the presiding officer of the Court Martial to the marshal of the district, &c. to be collected by him by distress and sale, &c. The act of Congress of the 2d of *February,* 1813, provides, that the militia, " *while in the service of the United States,*" shall be entitled to the same pay, &c. as the regular troops; and there is nothing else in this act that relates to this case. The act of the 18th of *April,* 1814, contains no provision in regard to the powers of the President in calling out the militia. But it directs, that Courts Martial, to be composed of militia officers alone, for the trial of militia drafted, detached and called forth for the service of the *United States,* whether acting in conjunction with the regular forces or otherwise, shall, whenever necessary, be appointed, held and conducted, in the manner prescribed by the rules and articles of war, for appointing, holding, and conducting Courts Martial for the trial of delinquents in the army of the *United States.* It directs, that where the punishment prescribed is by stoppage of pay, or imposing a fine limited by the amount of pay, the same is to have relation to the monthly pay at the time the offence was committed. It further enacts, that any officer or soldier of the militia " who shall have committed an offence while in the actual service of the *United States,* may be tried and punished for the same, although his term of service may have expired, in like manner as if he had been actually

in the service of the *United States.*" This act, also, pro-
vides many safeguards for the protection of the militia, who
are thus made amenable to Courts Martial, by directing
the mode of summoning delinquents; directing subpœnas
to be issued; authorizing proof by affidavit; prescribing the
mode of taking depositions; and declaring false swearing to
be perjury. But this act was limited in its duration to the
termination of the late war. All the existing provisions to
be found in the statutes of the *United States,* in regard to
the organization of Courts Martial, and directing their mode
of proceeding, at the time of the trial, (16th of *May,* 1818,)
are to be found in the rules and articles of war, which are
embodied in the act of the 10th of *April,* 1806. The 77th
article (rules and articles of war) directs, that " whenever
any officer shall be charged with a crime, he shall be ar-
rested, and confined in his barracks, quarters or tent; and
any officer who shall leave his confinement before he shall
be set at liberty by his commanding officer, shall be cashier-
ed. The 78th article provides, that " non-commissioned
officers and soldiers charged with crimes, shall be confined,
until tried by a Court Martial, or released by proper autho-
rity." The 80th article provides for the keeping of such
prisoners by the officer commanding a guard, or the provost-
marshal. Article 97th directs, that " the officers and sol-
diers of any troops, whether militia or others, *being mustered
and in pay of the United States,* shall, at all times, and in all
places, when joined, or acting in conjunction with the regu-
lar forces of the *United States,* be governed by these rules
and articles of war; and shall be subject to be tried by
Courts Martial in like manner with officers and soldiers in
the regular forces; save only, that such Courts Martial shall
be composed entirely of militia officers."

From the whole scope of this act, and from a careful re-
view of all the laws of the *United States* in regard to the mi-
litia, I am clearly of opinion, that the rules and articles of
war were intended only for the government, trial, and pu-
nishment of officers and soldiers *in the actual service or em-
ployment of the United States;* and that they have no appli-
cation to such a case as the present, where the militia-man
refused to obey the order of the Governor, " issued in com-

pliance with the requisition of the President of the *United States;"* and where the delinquent never did *enter the service or employment of the United States,* nor, in the words of the articles of war, was ever *mustered and in pay of the United States.*

The avowry states, that the Court Martial was " organized and convened by general orders, issued pursuant to the acts of Congress of *February* 28th, 1795, and of *February* 2d, 1813." Now, it appears that those acts contain no directions for organizing or convening a Court Martial; except that the act of 28th of *February,* 1795, directs " that Courts Martial for the trial of militia shall be composed of militia officers only ;" and provides " that the militia employed in the service of the *United States,* shall be subject to the same rules and articles of war, as the troops of the *United States."* The rules and articles of war, referred to in the act of 28th *February,* 1795, were the regulations adopted by various resolves of Congress under the old confederation, which had been ratified and adopted by Congress under the present constitution. But all those regulations, called the rules and articles of war, were collected, and reduced to one statute, in the act of 10th *April,* 1806, which has ever since formed the only system of regulations for organizing Courts Martial, under the authority of the *United States ;* all former rules and articles of war being therein expressly repealed.

During the late war, by the act of 18th of *April,* 1814, Congress modified the rules and articles of war, so as to adapt the proceedings of Courts Martial to the trial of militia, who might be ordered into the service of the *United States;* and many wise and cautious provisions are contained in that act, for the security of the *citizen-soldier,* while under a temporary subjection to the rigour of martial law. The chief object of that law was to discriminate between the officers and soldiers of the militia,and those of the regular army, when subjected to trial by Courts Martial. It was limited to the duration of the late war, thereby affording a strong inference, that in the opinion of Congress, the public interest did not require, and the law did not permit, the exercise of martial law upon our *citizens, during peace,* un-

der the authority of the *United States*, for delinquencies which had occurred during the war.

In support of this rational intendment, it is worthy of remark, that the same act (of the 18th of *April*, 1814) contains a provision (sec. 12.) " that any officer or private of the militia of the *United States*, who shall have committed an offence *while in the actual service of the United States*, may be tried and punished for the same, although his term of service may have expired, in the like manner, as if he had been actually in the service of the *United States*." Now, this affords two just inferences : 1st. That without this express provision, there would have existed no power under the authority of the *United States*, to try or punish a militia-man, who was not in the actual service of the *United States at the time of trial :* and, 2dly, by limiting that special provision to the duration of the war, Congress understood and intended, that all military jurisdiction over the militia should cease with the occasion which called for their aid.

The militia, as *citizens*, are peculiarly under the protection of the state sovereignty. They compose the only state force : and the genius of our government forbids that they should be subjected to the military tribunals of the federal government, unless it be during those extraordinary occasions defined in the constitution of the *United States*, when the public safety, and the high behests of war, demand the sacrifice.

When a delinquent militia-man is amenable to a Court-Martial of the *United States*, in any case, it ought to be remembered, that there is no provision in the laws, which secures to him a trial by militia officers of his own state. He may be tried *any where*, and by militia officers of any of the states. But it is sufficient for the proper decision of this case, that Congress do not, by the existing laws, assume a right to subject the militia to martial law, except while they are *in the actual service and pay of the United States.* The fact of the *termination* of the war need not be pleaded or averred ; because the treaty of peace is a part of the law of the land, and must, therefore, be regarded on demurrer.

The case of *Houston* v. *Moore*, in the Supreme Court of the *United States*, (5 *Wheat. Rep.* 1.) presented the question, whether an act of the legislature of *Pennsylvania*, providing for the punishment of officers and privates of the militia of that,

state, for delinquencies precisely similar to that charged against the plaintiff in this case, was constitutional and valid? Two of the judges were of opinion, that the state law was repugnant to the constitution and laws of the *United States;* but the other five judges were of opinion that it was constitutional and valid. That decision did not necessarily involve the question now before us: and it is very unfortunate, that the learned judges who united in affirming the state law, differed widely in the reasons which led to the conclusion. But the decision is in itself highly important in this case ; because it is now established, by the highest judicial authority, that a competent power resides in the state governments respectively, to punish such offenders. Upon examining the opinions given by the two learned judges, (*Washington* and *Johnson,*) who assigned their reasons in support of that decision, I feel strongly fortified in the opinion, that under the existing laws of the *United States,* the plaintiff was not amenable to a Court Martial of the *United States,* although it must be admitted that several *dicta* in those opinions, if isolated, would afford a contrary inference. Judge *Washington,* after reviewing the constitution, and all the acts of Congress relating to the militia, says, " from this brief summary of the laws, it would seem that *actual service* was considered by Congress as the *criterion* of national militia ; and that the service did not commence until the arrival of the militia at the place of rendezvous. That is the *terminus a quo* the service, the pay, and subjection to the articles of war, are to commence and continue." " And, indeed, it would seem to border somewhat upon an absurdity to say, that a militia-man was in the service of the *United States,* at any time, who, so far from entering into it for a single moment, had refused to do so, and who never did any act to connect him with such service. It has already been admitted, that if Congress had pleased so to declare, a militia-man, called into the service of the *United States,* might have been held and considered as being constructively in that service, though not actually so ; and might have been treated in like manner as if he had appeared at the place of rendezvous. But Congress have not so declared, nor have they made any provision applicable

to such case ; on the contrary, it would appear, that a fine to be paid by the delinquent militia-man, was deemed an equivalent for his services, and an atonement for his disobedience." " If, then, a militia-man, called into the service of the *United States*, shall refuse to obey the order, and is, consequently, not to be considered as in the service of the *United States*, or removed from the military jurisdiction of the state to which he belongs ; the next question is, whether it is competent to the state to provide for trying and punishing him for his disobedience, by a Court Martial, deriving its authority under the state ?" This question, he and four of the other judges answered in the affirmative. Mr. Justice *Johnson* remarks, " whatever be the views entertained on this question, I am perfectly satisfied that the individual in this case was not amenable to any law of the *United States* ; both that there was no law of the *United States* that reached his case, and that there was nothing done or intended to be done by the government of the *United States*, to bring him within their laws, before he reached the place of rendezvous."

Another ground on which to question the jurisdiction of the Court Martial in this case, rests on the distinction between an " *order* " by the President, calling forth the militia, which, according to the act of Congress (28th of *February*, 1795,) " may be issued for that purpose to such officer or officers of the militia as he shall think proper," and a *requisition* directed to the Governor of a state, requiring a quota or detachment of militia to be furnished or held in readiness for the service of the *United States.* The first is a mandatory act of the President, as Commander in Chief of the militia of the *United States ;* the latter may more properly be regarded as a request of the chief executive magistrate of the *United States*, addressed to the executive officer representing state-sovereignty. A sudden emergency might demand the summary mode of a *military order*, addressed to a mere *militia officer*, for the detachment wanted : but ordinarily, the President has adopted the more courteous and convenient mode of *requisition ;* that is, requesting the Governor of a state to organize a portion of militia, to be held in readiness or to rendezvous, for the service of the *United States.*

The 5th section of the act of 28th of *February*, 1795, declares, that every officer of the militia, who shall fail to obey such order of the President, shall be liable to be *fined* and *cashiered*, by the sentence of a Court Martial. Can the idea be tolerated, that the Governor of a state is to be regarded as a *militia officer*, in the sense of that act? What would be his rank in the army of the *United States?* Is he amenable to a Court Martial? Can he be thus *cashiered* from office? The genius of our political system revolts at such absurdities. The term " *requisition*" is borrowed from the usage under the old confederation of the states; and has acquired, with us, a peculiar and appropriate signification, as between the *United States* and the individual States.

The terms of the avowry in this case are, that the plaintiff refused " *obedience to the orders*" of the Governor, &c. " issued *in compliance with the requisition* of the President." To *obey an order*, and to *comply with a requisition*, is a phraseology which exhibits a correct discrimination in the use of language, and perfectly accords with the distinction which I have endeavoured to establish. Mr. Justice *Washington* and Mr. Justice *Johnson* both recognize this distinction, in *Houston* v. *Moore:* and they fully concur in opinion, that a refusal to comply with a " *requisition*," is not an offence cognizable by a Court Martial of the *United States.*

Another ground for questioning the jurisdiction of the Court Martial, is, that the act of Congress (28th of *February* 1795, sec. 5.) has not defined the *penalty* for such an offence, with that degree of certainty which is required in a penal statute. It is, that every private of the militia, who shall fail to obey the orders of the President, " *shall forfeit a sum not exceeding one year's pay, and not less than one month's pay*." Pay of whom? Such delinquent could never be entitled to any pay, because he did not enter the service. Congress probably intended the pay allowed by law for the time being, to a person of another description, to wit, a private soldier, while in the service and pay of the *United States.* But surely, a judge, in the construction of a penal statute, has no right to guess at the meaning of the legislature, and supply such an omission of the statute, in

measuring punishment to an offender.  The rules and arti-
cles of war (*Art.* 28.) declare, " that no person shall be lia-
ble to be tried and punished by a General Court Martial,
for any offence which shall appear to have been committed
more than two years before the issuing of the order for such
trial; unless the person, by reason of having absented him-
self, or of some other manifest impediment, shall not have
been amenable to justice within that period."  The plain-
tiff might have claimed protection under this limitation, *at
the trial*: but he certainly cannot avail himself of this shield,
upon *demurrer*.  The saving and exception in the statute,
of *absence* or *manifest impediment*, was a matter of proof;
and we must now intend, that it was proved at the trial.

If a Court Martial of the *United States* had jurisdiction of
the offence, still I incline to the opinion, that the avowry in
this case is *defective*; because, it appears that the General
Court Martial which convicted the plaintiff, was composed
of only six members, whereas the law requires that such
Court shall consist of not less than *thirteen* members; ex-
cept in an extraordinary emergency, which is not averred
to have existed in the present case.  It is a court of *special
and limited* jurisdiction; and the avowry ought to aver eve-
ry prerequisite to confer jurisdiction.  Here the averment
is, that six officers of the militia (naming them) composed a
General Court Martial, which " was *duly organized and
convened* by general orders, issued pursuant to the acts of
Congress of *February* 28, 1795, and of *February* 2, 1813."
It is certain, that neither of those acts contains any rule or
direction whatever as to the organization of Courts Martial,
except " that Courts Martial for the trial of militia shall be
composed of militia officers only;" and " that the militia
employed in the service of the *United States* shall be sub-
ject to the same rules and articles of war as the troops of
the *United States*."

Now, the rules and articles of war (*art.* 64) prescribe,
" that general Courts Martial may consist of any number of
commissioned officers, from *five* to *thirteen* inclusively, but
shall not consist of less than *thirteen*, where that number
can be convened, without manifest injury to the service."

I admit, that the officer instituting the Court Martial, is

NEW-YORK,
May, 1821.

MILLS
v.
MARTIN.

to judge and decide, on the point of "*manifest injury to the service*." But I contend, that he is bound to *adjudicate*, and to express his opinion to that effect, whenever he directs a general Court Martial to consist of less than thirteen members; and the fact of "*manifest injury to the service*," ought to have been averred, in order to show jurisdiction in *six* members only. It cannot be tolerated, that a military officer may, at his pleasure, disregard a statute provision, so important to the public, and to the party accused, who has always a right to a trial before thirteen officers, except in the one specified case. We have been told, (on the argument,) that this Court Martial imposed fines to the amount of one hundred thousand dollars. And, surely, there could be no possible ground to imagine, that "*manifest injury to the service*" would arise from convening *thirteen* militia officers, on the 16th of *May*, 1818, when the *United States* were in profound peace and tranquillity; and when, perhaps, not a single militia officer in the *United States* was otherwise employed in the public service.

The avowry is, in my judgment, also defective, because it avers, that the Court Martial "was duly organized and convened by general orders, issued pursuant to the acts of Congress of *February* 28th, 1795, and of *February* 2d, 1813," without stating the title of any particular statute, there being several acts of Congress of each of those dates; and because it is not averred *by whom* such *general order* was made, either by name, or by style of office. A *special jurisdiction* cannot be supported by such vague references to authority. It might as well have been averred, that the Court was appointed and held *according to law*. The law does not allow such a title to be set out, or such a jurisdiction to be assumed, in this summary form.

The avowry is, also, defective, because it does not state that the proceedings of the Court Martial were reported to the officer appointing the Court, and by him *confirmed*, before the sentence was executed. The rules and articles of war (art. 65.) provide, that "any general officer commanding an army, or colonel commanding a separate detachment, may appoint General Courts Martial whenever necessary. But no sentence of a Court Martial shall be carried into

execution, until after the whole proceedings shall have been laid before the officer ordering the same, or the officer commanding the troops for the time being; neither shall any sentence of a General Court Martial, in time of peace, extending to the loss of life, or the dismission of a commissioned officer, or which shall, either in time of peace or war, respect a general officer, be carried into execution, until after the whole proceedings shall have been transmitted to the secretary of war, to be laid before the President of the *United States,* for his confirmation or disapproval, and orders in the case.   All other sentences may be confirmed and executed by the officer ordering the Court to assemble, or the commanding officer, for the time being, as the case may be." It seems clear, that every sentence of a Court Martial is interlocutory and inchoate, until an order of confirmation by the commanding officer.   Can there be a doubt, then, that in justifying under such a sentence, the defendant is bound to aver such confirmation? The proceedings of the Court Martial were not definitive, but merely in the nature of an inquest, to inform the conscience of the commanding officer.   He, alone, could not condemn or punish, without the judgment of a Court Martial; and, it is equally clear, that the Court could not punish without his order of confirmation.   As well might a justification be set up under an execution issued upon an interlocutory judgment and writ of inquiry, before final judgment in this Court. This regulation is perfectly consistent with the act of the 28th of *February,* 1795.   But if contradictory, the act of the 10th of *April,* 1806, (rules and articles of war,) being posterior, must govern.

The case of *Vanderheyden* v. *Young,* (11 *Johns. Rep.* 150.) is distinguishable from the present case, in every essential feature.   There the militia-man (*Vanderheyden*) obeyed the call by actually entering the service of the *United States,* marched to *Plattsburgh* from the rendezvous at *Troy,* and then deserted, while in the service and pay of the *United States.*   There it was held, that the militiaman was properly tried under the rules and articles of war of the 10th of *April,* 1806, although the offence was created and defined by the act of the 28th of *February,* 1795, which

was held to be *prospective*. But, in that case, the plea of justification (in a suit against the President of the Court Martial) averred, that pursuant to the rules and articles of war, the sentence and proceedings of the Court Martial had been reported to Major General *Henry Dearborn*, who appointed the Court; and that the sentence had been approved and confirmed by him, before it was executed. In this case, the avowry expressly admits, that the militia man did not rendezvous, nor enter the service of the *United States*. The Court Martial was instituted, we know not by whom, and there is an entire omission to state, that the sentence of the Court was confirmed by the commanding officer.

If there was no jurisdiction of the offence ; or, if tested by the rules of pleading, the avowry does not show a competent authority to impose the fine, and to issue the certificate for its collection, then it irresistibly follows, that the whole proceedings are void ; and the taking of the plaintiff's property was a trespass. (*Wise* v. *Withers*, 3 *Cranch*, 831. *Smith* v. *Shaw*, 12 *Johns. Rep.* 357. *Suydam & Wyckoff* v. *Keys*, 13 *Johns. Rep.* 444. *Cable* v. *Cooper*, 15 *Johns. Rep.* 157.

It is also clear, that *replevin*, as well as *trespass*, lies in such a case. (*Pangburn* v. *Partridge*, 7 *Johns. Rep.* 140; and cases there cited.) I am therefore of opinion, that the plaintiff is entitled to judgment on the demurrer.

SPENCER, Ch. J. The elaborate manner in which this cause was argued, the amount of property involved, from the great number of causes depending on the decision, and the delicacy of the questions which have been drawn in discussion, have induced me also to express my opinion.

I shall consider only two points, which go to the entire merits of the case, and virtually decide all the causes: 1st. Is the action of replevin an appropriate remedy ? 2d. Is the avowry good in substance ?

1. It is objected against the action of replevin, that it has been decided in this Court, that replevin will not lie for goods taken by an officer on a writ of execution, whilst in

the possession of the person against whom the execution has issued. This has been so decided in *Thompson* v. *Button,* (14 *Johns. Rep.* 86.) and *Gardner* v. *Campbell;* (15 *Johns. Rep.* 401.) and I continue to think that those cases were decided in consonance with sound principles and established law. It must, however, be borne in mind, that it was assumed by the Court, and the cases referred to justified the assumption, that the executions were issued on regular and valid judgments. If it had appeared that the executions in those cases had issued without any judgments to support them, or upon judgments illegal and void, most certainly the conclusion would have been different, for then the executions would not have justified the taking the goods, however they might have protected the officer from personal liability as a tort-feasor. In the present case, in as much as the avowry states the authority under which the goods were taken, if it turns out that the Court itself had no jurisdiction to try and punish the plaintiff for his supposed delinquency, and that their proceedings were *coram non judice* and void, then would the defendant be a trespasser, and the taking would be tortious; and for such taking, according to the case of *Pangburn* v. *Patridge,* (7 *Johns. Rep.* 142.) this action lies. *Marriot* v. *Shaw* (*Comyn's Rep.* 275.) is a case in point; there replevin was brought and maintained, by the judgment of the Court, for taking goods on an illegal and void conviction.

It is necessary that we should distinctly define and settle the powers and jurisdiction of Courts Martial. They are undoubtedly Courts of a special and limited jurisdiction, having power to hear and determine, in the particular exigency, and upon the particular cases, with a view to which they are organized. While acting within the line o ftheir authority, they are protected, as to errors in judgment; otherwise, they are not protected. If they exceed their jurisdiction, they are personally answerable. (2 *Sir Wm. Bl.* 1145.) These principles have been long settled and established. In the case of the *Marshalsea,* (10 *Co.* 76.) it was resolved, that the action for false imprisonment well lay against the defendants; and a difference was taken when a Court has jurisdiction of the cause, and proceeds

*inverso ordine*, or erroneously, no action lies against the party who sues out, or the officer or minister of the Court who executes the precept or process of the Court; but when the Court has not jurisdiction of the cause, then the whole proceeding is *coram non judice*, and actions will lie against them, without any regard to the precept or process. That a Court Martial is a Court of special and limited jurisdiction must be evident upon the slightest reflection. It is called into existence for special and temporary purposes, and when those purposes are answered, it is dissolved and disappears. That it is limited to particular offenders and offences, and to those only, is equally certain. All its powers are, therefore, special and limited.

The defendant having justified under the sentence of a Court Martial, it was necessary to show that the Court was legally constituted, in order to gain jurisdiction of the persons and offences of those who were to be tried before it; and, also, that their sentence was conformable to law.

No lawyer will controvert the position, that to uphold and give validity to the proceedings of a Court, it must have jurisdiction of the person of the defendant, and of the cause. This principle is applicable to all Courts, from the highest to the lowest. In *Borden* v. *Fitch*, (15 *Johns. Rep.* 141.) where the question arose on the validity of a decree or sentence of the Supreme Court of the state of *Vermont*, *Thompson*, Ch. J. said, " that to give any binding effect to a judgment, it is essential that the Court should have jurisdiction of the person, and of the subject matter; and the want of jurisdiction is a matter that may always be set up against a judgment, when sought to be enforced, or where any benefit is claimed under it. The want of jurisdiction makes it utterly void and unavailable for any purpose." There is, however, a marked and decided distinction between superior Courts of general jurisdiction, and inferior Courts, or Courts of special and limited jurisdiction. In the former case, the intendment of the law is, that they had jurisdiction, until the contrary appears; but with regard to inferior Courts, or those of special and limited jurisdiction, those who claim any right or exemption under

their proceedings, are bound to show, affirmatively, that they had jurisdiction. (1 *Saund.* 74. and the notes.) It will be seen, that so far has this doctrine been carried, that if a man bring an action in an inferior Court, when the cause of action did not arise within its jurisdiction, and the person or goods of the defendant are taken in execution under its process, though the judge and officers of the Court are excused, if it had jurisdiction over the cause, yet the plaintiff in the action is considered as a trespasser; and even the attorney has been so considered, where he had acted beyond his duty or authority as an attorney. (6 *Term Rep.* 245. 4 *Burr.* 2108.) The cases of *Service* v. *Heermance*, (1 *Johns. Rep.* 91.) and *Tracy* v. *Dakin*, (7 *Johns. Rep.* 75.) bear strongly on the question now before us. It was there decided, that a discharge under the insolvent act granted by the Chief Justice, might be pleaded in the same manner as the proceedings of an inferior Court; that it was sufficient to state enough to give the magistrate jurisdiction, and then *taliter processum fuit*, that he was discharged by the magistrate. We held it to be an elementary principle in pleading, that every plea must be so pleaded as to be capable of trial, and, therefore, must consist of matter of fact, the existence of which may be tried by a jury, as an issue, or its sufficiency, as a matter of defence, determined by the Court, on a demurrer. In the case of *Tracy* v. *Dakin*, the plea stated, that the defendant appeared before the Chief Justice, and delivered to him, according to the act, &c. the petition, &c. and we held the plea to be bad, in not stating, positively and affirmatively, that creditors to the amount of three-fourths of all the insolvent owed, had united with him in the petition, and we said the law was not satisfied with inferences, when the fact itself was material, and might be traversed. The cases of *Ladbroke* v. *Giles*, and *Sollers* v. *Lawrence*, (*Willis*, 199. and 416.) were referred to by the Court, and much relied on. In the former case, it was decided, that in pleading a judgment of a Court of limited jurisdiction, it was necessary to state those facts which gave the Court jurisdiction, and having done so, then to allege generally the judgment of the Court. (*Doug.* 97. and 7 *Term Rep.* 305.) In *Sollers* v. *Lawrence*, *Willes*,

Ch. J., in considering the proceedings of a Court of a spe-
cial and limited jurisdiction, lays down the rule to be, that
nothing is to be intended in favour of their jurisdiction, but
that it must appear, by what is set forth in the record, that
they had such a jurisdiction ; and if they had a jurisdiction,
every thing must be intended in favour of their judgment;
and they must be taken to have judged right, unless the
contrary appears by any thing that is set forth on the re-
cord. (*Jones* v. *Reed*, 1 *Johns. Cases*, 20. S. P.) In
the case of *Wise* v. *Withers*, (3 *Cranch's Rep.* 331.) the
Supreme Court of the *United States* proceeded on the prin-
ciples laid down in the cases cited from *Willes*. A Justice
of the Peace had been fined by a Court Martial, within the
district of *Columbia ;* and for taking his goods to satisfy the
fine, an action of trespass was brought against the collector.
It was decided, first, that a Justice of the Peace within that
district, was not liable to do militia duty ; secondly, that a
Court Martial had no jurisdiction over him, and he could not
legally be enrolled ; and, thirdly, " that it was a principle
that a decision of such a tribunal, in a case without its ju-
risdiction, cannot protect the officer who executes it; that
the Court and officer are all trespassers." This case,
then, is a direct authority for saying, that Courts Martial are
Courts of special and limited jurisdiction, subject to all the
rules for the regulation of the proceedings of such Courts.
To the same point are the cases of *Moravia* v. *Sloper*,
(*Willes*, 30.) and *Morse* v. *James and others ;* (*Willes*, 122.)
and I will venture to assert, that none of the cases cited,
unless such as have been repeatedly overruled, deny the po-
sitions I have advanced.

2. I now proceed to examine whether the avowry in
this case sets forth enough to give the Court Martial juris-
diction. That I may not unnecessarily occupy time, I shall
confine my inquiry to the organization of the Court itself;
for if the avowry does not set forth enough to show, that the
Court was legally constituted, as I hold that it does not, it
would be useless to examine the proceedings of the Court, or
to inquire whether it has been shown that the plaintiff was sub-
ject to their jurisdiction. The Court being called into ex-
istence for a special and limited purpose, existing only tem-

NEW-YORK, porarily, and *pro hac vice*, it must be organized agreeably to
May, 1821. law; and this must be shown definitely and distinctly, for
MILLS it is a traversable fact. Facts must be set forth with cer-
v. tainty; by which is meant, a clear and distinct statement of
MARTIN. the facts, which constitute the cause of action, or ground
of defence, so that they may be understood by the party
who is to answer them, by the jury who are to ascertain the
truth of the allegations, and by the Court who are to give
judgment. (*Cowp.* 682. *Com. Dig. Pleader*, 6. 17. *Co.
Lit.* 303. 2 *Bos. & Pul.* 267. 10 *Johns. Rep.* 163. *Prid-
dle* and *Napper's case*, 11 *Co.* 8. b. *Plowd.* 231. a. 2 *H.
Bl.* 182. 1 *Saund.* 23. n. 5.)

The avowry states, that on the 18th day of *May*, 1818, a
*General Court Martial*, composed of officers of militia of the
state of *New-York*, in the service of the *United States*, to
wit, Brigadier (now Major) General *Steddiford*, President,
*Lieutenant Colonel B. M. Van Beuren, Lieutenant Colonel
Jonathan Varian, Lieutenant Colonel Benjamin J. Gurnee,
Lieutenant Colonel Michael Smith, Major William Wigton,*
members, *was duly organized and convened by general orders,*
issued pursuant to the acts of Congress of the 28th of *Fe-
bruary,* 1795, and of the 2d of *February,* 1813, for the trial
of those of the militia of the state of *New-York* who had
failed, neglected, or refused to rendezvous, and enter the
service of the *United States of America*, in obedience to the
orders of the commander in chief of the militia of the state
of *New-York*, of the 4th and 29th of *August*, 1814, issued
in compliance with the requisition of the President of the
*United States*, made pursuant to the acts of Congress, &c.
&c. It then proceeds to state, that the plaintiff was a pri-
vate in the militia of the state of *New-York*, and did fail,
neglect, or refuse to rendezvous and enter the service afore-
said, and was duly convicted by said Court Martial of the
said delinquency; that a fine of 64 dollars was imposed by
the said Court Martial, setting forth the certificate to the
marshal of the southern district of *New-York*, &c. &c. &c.
justifying the taking the plaintiffs goods thereunder, con-
cluding with a verification and prayer of judgment.

The act of Congress of the 10th of *April*, 1806, establishes
the rules and articles by which the armies of the *United*

*States* shall be governed; and the 65th article provides, that any general officer commanding an army, or colonel commanding a separate department, may appoint General Courts Martial, whenever necessary. Now, the only allegation is, that this Court Martial *was duly organized and convened by general orders issued pursuant to the acts of Congress.* Who issued those orders? Whether the President of the *United States*, the Governor of this state, or a general in the service of the *United States*, is no where stated. A fact so vital and important, to impart jurisdiction to the Court, ought to have been precisely averred; and it is impossible, consistent with the established rules of pleading, to support such a plea. The plaintiff was entitled to have the fact stated, by whose orders the Court was organized, for it was a material and traversable fact; and how is it possible to take issue on such an allegation? Who are to try the fact whether the Court was duly organized and convened by general orders issued pursuant to the acts of Congress referred to? If issue were to be taken on that part of the plea, by negativing the fact, that the Court was duly organized as alleged, it would be referring to the jury a question of law, the true construction of the acts of Congress, which would be in opposition to every principle of law. The plaintiff has no mode left to him of testing the legal institution of the Court, but by a demurrer; to compel the defendant to set forth the officer and his qualifications to organize the Court. Thus, in *Cruger* v. *Cropsie*, (3 *Johns. Rep.* 242.) the defendant pleaded a discharge under the insolvent act, and stated generally, that the defendant being an insolvent debtor, and having, in all things, conformed to the directions of the act, and in pursuance thereof, obtained his discharge, as by relation thereto would more fully appear; and we held it to be a bad plea. In 1 *Chitty's Pleader*, 215. the rule is simply and perspicuously laid down. Pleading is the statement of the facts which constitute the plaintiff's cause of action, or the defendant's ground of defence, in a logical and legal form; it is the formal mode of alleging that on the record, which would be the support or the defence of the party in evidence." Mr. Justice *Buller*, in *Read* v. *Brookman*, (3 *Term Rep.* 159.) says, " pleading is

the formal mode of alleging that on the record which would be the support or the defence of the party on evidence." It is one of the first principles in pleading, that it is only necessary to state facts, which must be done for the information of the Court, whose duty it is to declare the law arising on those facts, and of apprising the opposite party what is meant to be proved, in order to give him an opportunity to answer or traverse it. (1 *Chitty*, 215. *Doug.* 278.) Facts only are to be stated, not arguments or inferences, or matters of law. (*Cowp.* 684. 5 *East*, 275. *Com. Dig. Plead.* 6. 78.) I am, therefore, both on authority, and the reason of the thing, entirely satisfied, that the avowry is essentially defective in this respect.

I have not thought it necessary to express an opinion on the other exceptions to the avowry, having come to so satisfactory a result on the main point; nor have I thought it incumbent to examine the plea to the avowry, although I have no doubt that it is bad; but as the defendant has committed the first error, he must fail on his avowry.

I am entirely satisfied that the opinion delivered by Mr. Justice *Platt* is perfectly correct ; and, therefore, forbear expressing my own sentiments on the points he has discussed.

*Per totam Curiam.* Judgment for the plaintiff, with leave to the defendant to amend on payment of costs.