### ROBERT J. BRENT Trustee of REBECCA P. MAGRUDER, *vs.* HENRY J. TAYLOR and ABIEL MARKS.

In proceedings against the property of married women, under the act of 1842, ch. 293, sec. 8, the provisions of the attachment laws so far as consistent with the design and purpose of that act should be observed, and without the short note as means of notice to the debtor, the proceedings are *coram non judice* and void.

The proceedings under this act are *in rem* and not *in personam:* their object is not to compel the appearance of the debtor, with a view to a judgment against her, nor to seize her property by way of execution, but to obtain a lien on it with a view to the payment of the claim, and hence the *capias* or summons is not necessary.

It is not necessary that there should be a petition and answer and proof of claim, before the writ of attachment issues: it is sufficient if the creditor lays a foundation for the writ by affidavit and the proper voucher according to the practice under the attachment laws.

APPEAL from the Superior court of Baltimore city.

The proceedings in this case instituted by the appellees, were by way of attachment against the property of a married woman, under the act of 1842, ch. 293.

The appellees, citizens of New York, trading under the firm of Taylor & Marks, filed a petition in Baltimore county court, on the 12th of January 1850, alleging that in 1849,

Rebecca P. Magruder wife of J. H. Magruder, purchased of them goods to the value of $874.57, suitable to the business of a milliner, which she carried on in the city of Baltimore, acting as a *feme sole*, her husband having nothing to do therewith: that she had a stock of goods worth $1000, acquired or earned by her skill, industry or personal labor, since the passage of the act of 1842, ch. 293, liable for the balance of $547.57, due on their debt, and praying that an attachment might issue according to the course of the attachment law, against the property of said Rebecca.

The account (the first item of which was "to merchandise per bill rendered, $579.21,") on which the said Rebecca was so indebted, was annexed to the petition, and both were verified by the affidavit of Marks, one of the appellees, made before a judge of the court of Common Pleas for the city and county of New York. On the same day the court (PURVIANCE, A. J.,) ordered a writ of attachment to issue against the property of said Rebecca, to the value of $1000 or less, earned by her skill, industry or personal labor, to answer unto the appellees the sum of $524.57, and costs, and the writ was accordingly issued on the same day, by the clerk of said court, commanding the sheriff to attach the property of said Rebecca, to the value of $524.57, and costs of attachment, and containing the usal *scire facias* clause, to the parties in whose hands the attachment should be laid, to appear and show cause why the property attached should not be condemned for the use of the appellees.

On the 14th of January 1850, being the return day of the writ, and after the adjournment of the county court for that day, the writ was laid on the goods in the store of said Rebecca specified in a schedule annexed to the return, and returned "attached as per schedule." On the 15th of January 1850, the day following the service of the writ, the said Rebecca voluntarily appeared by counsel and moved to quash the attachment. 1st. Because no summons or *capias* issued at the same time with the writ. 2nd. Because no short note was filed in the case, according to the course of the

Brent, Trustee, &c., *vs.* Taylor and Marks.

attachment law. 3rd. Because the writ was not served or executed until after the rising of the court on the return day thereof. And 4th. Because the proceedings are otherwise defective and irregular. But this motion the court (Le Grand, A. J.,) overruled.

On the same day, viz., the 15th of January 1850, the said Rebecca and her husband, executed a deed to Brent, the appellant, of all her property, in trust to sell the same and distribute the net proceeds among her creditors as a *feme sole* trader. It was subsequently agreed that the property should be sold by the trustee, the proceeds to remain liable in his hands, for the claim of the appellees, as the property was under the attachment, reserving however the right to the said Rebecca, to object to the regularity of the attachment and the proceedings thereunder. On the first of May following, the death of said Rebecca was suggested by her counsel, the appellant.

Subsequently the appellant, as trustee, appeared and claimed the property, under the deed to him. After this, various pleas were filed by the claimant on which issues were joined, all of which it is not necessary to state, as by agreement all errors in pleading were waived, and liberty reserved to either party, to rely on any facts as if the same were specially pleaded.

An agreement was subsequently filed in the case, admitting the marriage of the said Rebecca P. and J. H. Magruder, more than fifteen years ago; that she had in 1843, and ever since, up to the time of executing the deed of trust to the appellant, carried on business as a milliner in the city of Baltimore, on her separate account and in her own name, and acquired and earned property therein, by her own industry, skill, credit and labor, with the assent of her husband, who took no part therein; that she purchased the goods charged in the account of the appellees, and that this account was due and unpaid as charged; that the writ of attachment in this case was returnable on the 14th of January 1850, and was on that day, in the evening thereof, and after the adjournment of Baltimore county court, for that day, laid on the goods in the schedule specified, and the appraisement thereof

was made and signed on the day following; that said goods were at the time of the seizure in the store of said Rebecca, and in her possession, that all her property in said business at that time amounted to the sum of $529.31, and is embraced in said appraisement, and that no *capias* or summons or other process was served on her or her husband other than appears in the sheriff's return.

The case was tried in the Superior court for Baltimore city, at its September term 1852.

*Exception.* The plaintiffs having offered in evidence the aforegoing proceedings and agreements, the claimant then read his deed of trust above referred to, and prayed the court to instruct the jury, as follows:

1. That the plaintiffs cannot rely on their writ of attachment and the proceedings thereunder, if the jury shall find that said writ was served on the return day in the afternoon, and after the court to which it was returnable had adjourned for that day, and that the schedule and appraisement offered in evidence were made out on the next day.

2. That the proceedings and proof offered in evidence, are not sufficient to enable the plaintiffs to recover, because there was no summons or *capias* issued against the said Rebecca.

3. That said proceedings are not sufficient, because there was no short note, according to the course of the attachment law.

4. That they are not sufficient, because the order of Baltimore county court, for the issuing said writ, and the writ issued thereon, authorise the seizure and attachment of the lands, tenements, goods, chattels and credits of said Rebecca, which she may have earned by her skill, industry or personal labor, to the value of $524.57, and costs of attachment.

5. That the writ and proceedings thereon are inoperative and void to divest the title of said Rebecca, to the goods and chattels in controversy, because no *capias* or summons issued with said writ, according to the course of the attachment law.

The court (FRICK, J.,) rejected these prayers for the reason, that the same propositions had been decided by the associate

judge of Baltimore county court, upon the motion to quash the attachment. The claimant excepted, and the verdict and judgment being in favor of the plaintiffs, he appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Robert J. Brent* for the appellant.

I contend that the proceedings should have been quashed on motion, if they were in anywise defective. 1 *H. & McH.*, 504, *Thompson vs. Towson.* 3 *Do.*, 535, *Campbell vs. Morris.* 6 *G. & J.*, 345, *Bruce, et al., vs. Cook.* 10 *Do.*, 383, *Stone vs. Magruder.* 2 *Md. Rep.*, 338, *Lambden vs. Bowie.* The act of 1842, ch. 293, sec. 8, on which this proceeding is based, subjects the property of a married woman acquired by her labor, &c., "to the payment of any claim or debt incurred by such married woman," and it is "to be proceeded against by attachment from the county court, to compel such payment, upon petition and proof of claim, according to the circumstances of each case, according to the course of the attachment law." My view of this law is, that the property of married women is not to be seized *in limine*, but only liable to attachment after petition and proof of claim, according to the circumstances of each case. It is true the law does not expressly provide for an answer to the petition, but it follows from principles of general justice, that an opportunity should be afforded of answering, in order that the proof may be taken to support the petition, where necessary. By the terms, "upon petition and proof," the law could not mean *ex parte proof*, much less the petitioner's own oath to an account of more than $500. It is most consistent with reason and natural justice, that the court should decide the validity of the claim by judicial evidence or proof upon notice to the adverse party, and this notice should be either positive or constructive. 4 *Pet.*, 475, *Hollingsworth vs. Barbour.* The judgment is void if no notice to defendant. 6 *How.*, 164, *Shelton vs. Tiffin.* I regard the order for the attachment as the

final and conclusive judgment upon the petition and proof, and there must be previous notice, or the judgment is void. I therefore submit that the opportunity to contest this claim was legally before the judgment or order for the attachment, and yet there is no proof of notice to the married woman.

But it is said this view is wrong, because the case is to be according to the course of the attachment law. That is a mistake; the property "is to be liable to attachment from the county court, to compel the payment upon petition and proof of claim according to the circumstances of each case," and it is only when the attachment is awarded that we are to look to the course of the attachment law. Hence the words are "upon proof of such claim according to the circumstances in each case," and the attachment is to go by judgment on that proof. What is proof? Is the oath of a plaintiff any thing like proof? Is it more than his claim? And if it is but the claim itself, can the court give judgment without other "proof of such claim?" This law contemplated that the court before ordering the attachment, should, upon petition, notice and legal proof, be satisfied, first, that there was a debt, and secondly, that the married woman had property, acquired by her industry, &c., liable for her debt, and which they could order to be attached. Yet this proceeding tells the sheriff, a ministerial officer, that he is to attach generally, such property as she may have acquired by her industry, &c., not exceeding $1000 in value. How is the sheriff to ascertain these judicial questions? Would he be protected if he took other property, and if not, then the court have delegated to their officer that judicial matter which it became them to ascertain before ordering the writ. In the case of *Barney vs. Patterson,* 6 *H. & J.,* 182, it was sought collaterally to impeach the judgment of the United States court, because in a proceeding by attachment upon two *non ests,* under the act of 1715, ch. 40, sec. 3, the court had not taken the requisite proof of the claim before issuing the attachment, and the Court of Appeals decided that the particular proof to the satisfaction of the court, need not appear. But it will be observed in that case

1. That the record of the attachment suit, stated that the plaintiff proved its damages to the court. 2. That the question of the sufficiency of the proof, was raised in another suit collaterally. 3. That the act of 1715, specially delegated the sufficiency of the proof to the court, after two *non ests* returned against the debtor, and there was therefore every legal effort to notify the debtor before taking the proof *ex parte*, and before ordering the attachment. While in this case the proof is the party's own claim, and no effort to serve or notify the *feme covert trader*, and a judgment of attachment ordered, altogether *ex parte*. Now here is no proceeding, even according to the course of the attachment law of 1715, because it was admitted in that case, that there must be independent proof to the court before ordering the attachment. If the action of the court below is correct, the cause is ended and decided before process against, or parties in court, for the petition and proof can only be required once.

But suppose I am wrong in this, and that the course of the attachment law required the attachment to be *in limine*, and the litigation afterwards, then we must test the proceedings' by the course of the attachment law in cases where the creditor proceeds by attachment before judgment, and not by way of execution on a judgment. Here the creditors have proceeded in part upon the terms of the act of 1795, ch. 56, and why not adopt the other equitable requirements of that act, the *capias* and the short note, there being equal propriety in notifying the debtor *feme covert?* 10 *G. & J.*, 383, *Stone vs. Magruder.* And why not the return of the sheriff to the *scire facias* clause to the party in possession? 6 *H. & J.*, 201, *Barney vs. Patterson.* The goods were seized in Mrs. Magruder's possession; and no return of the sheriff *scire feci.* Again, the appraisement was necessary, first, to value the goods under the $1000; secondly, because it is the settled law. *Evans' Pr.*, 84. Yet here is the appraisement to fix that value and to enable the sheriff to make his levy made on the 15th January, after the return day of his writ. If the appraisement is necessary to make a legal seizure to a given value, there could

be no legal attachment until that appraisement, and the facts show that the writ was not served until after the adjournment of the court on the return day.  Whatever the English cases may decide about serving writs on the return day, this case must be governed by the language of the act of 1715, ch. 40, sec. 3, which expressly requires the attachment to be returned on the return day, and if the *scire facias* is served on the party in possession, and he does not on the return day show cause why condemnation should not be had, the court are directed to enter judgment.  How is it possible for the party in possession to show cause on the return day, when the writ is not served on him until after the adjournment of the court?  The writ is *functus officio* if not served before the return day.  3 *Harrison*, 22, *State vs. Kennedy.*  2 *Do.*, 11, *Chapman vs. Cumming.*  3 *How.*, *(Miss. Rep.,)* 70, *Calhoun vs. Matlock.* 12 *Verm.*, 22.  Here in point of fact nothing was done, but the seizure of the goods on the return day, after the court had risen for the day.  In this case therefore the plaintiffs have not proceeded "according to the course of the attachment law" in any respect, except in the form of their affidavit to the claim and the writ of attachment itself; there is no *capias*, no short note, no proof of claim, but their own oath, and no appraisement, and no return of notice to show cause to the party in possession.

Again, I submit that the husband should be made a party defendant.  Even where his wife is sued as executrix, or in equity as a *feme sole* in respect to separate property, he is made a joint defendant.  *Jones vs. Harris*, 9 *Ves.*, 488.  *Calvert on Parties*, 268, in 17 *Law Lib.*, 153.  But if she is to be sued as a *feme sole* and her husband not joined, then at the date of the inception of this proceeding she was privileged from arrest, even if the *capias* had issued, and she might have appeared and contested the attachment without special bail. *Act of* 1824, ch. 206.  *Evans' Pr.*, 89, 97, 98.  1834, ch. 79, sec. 2.

The other ground of the motion to quash is that the proceedings are otherwise defective and irregular.  This suffi-

ciently raises the question touching any other defect than those specified as the particular grounds of the motion.   See 6 *G. & J.*, 347, *Bruce vs. Cook.*   4 *G. & J.*, 407, *Charlotte Hall School vs. Greenwell.*   5 *G. & J.*, 102, *Sasscer vs. Walker.* 1 *Gill*, 379, *Boarman vs. Israel.*   4 *Md. Rep.*, 514, *Price & Martin, vs. Thomas & George.*   The account produced with the affidavit is defective and this is fatal.   12 *G. & J.*, 53, *Dawson vs. Brown.*   The account says, Mrs. Magruder is indebted so much as "*per bill rendered;*" the bill should have been produced.

*John Carson* and *George W. Brown* for the appellees.

The act of 1842, ch. 293, sec. 8, prescribes no particular form of procedure by which the property of a married woman, there specified, can be reached in satisfaction of her debts. The form of proceeding must be framed by the courts in accordance with the law itself.   We say that an attachment under this act is a proceeding *in rem*, and not *in personam*. The attachment is to issue from the court on "petition and proof of claim according to the circumstances of each case." The attachment only is to be "according to the course of the attachment law."

The act says nothing about a preliminary trial, and it would indeed be a curious anomaly if the court were to sit and adjudicate the claim, and then issue an attachment, for if there is to be a final trial upon the debt before the attachment issues, the proper writ would be a *fi. fa.* against the property itself; an attachment would then be useless.   Again, if there was to be a preliminary trial the property would be, in the meantime, made way with, and thus the very object of the law would be defeated.   An attachment is not a final judgment, and under all our laws, except in cases where it is issued by way of execution, it issues upon *ex-parte* proof.   The *scire facias* clause requires the party to come in, and then the plaintiff must make out his case.   This clause was inserted in this writ and gave legal notice of the proceedings to Mrs. Magruder, in whose possession the goods were which were attached under it.

But it is said that although the attachment is to go upon *ex-parte* proof, yet there must go with it a short note and *capias*, and that to this the defendant is to appear. We insist that the short note and *capias* are not parts of the attachment, but collateral proceedings, designed to obtain a personal judgment against defendants in cases in which the law requires them to issue, but the act of 1842 does not contemplate a personal judgment against the defendant, who is a married woman, and therefore no short note, *capias*, or summons, is necessary or would be proper. The act says the attachment is to go *upon petition* and proof of claim. This was to be the substitute for the short note and *capias*. What is to be done with the petition if that is not its object? Again, a married woman may contract debts to any amount, yet she can hold as of her own earnings but $1000, and if a short note and *capias* can be issued, there may be a personal judgment recovered against her for $10,000, when she has but $1000 to answer it. What is to become of these personal judgments? Are they binding on her future earnings or against her husband? The attachment is a separate, independent, process, and the short note and *capias* is another and distinct proceeding. 7 *Gill*, 415, *Bank of the U. S. vs. Merchants Bank;* 3 *Gill*, 326, *Barr vs. Perry;* 2 *Md. Rep.*, 339, *Lambden vs. Bowie*, and *Act of* 1835, *ch.* 201, *sec.* 14. The intention of this law evidently is, that the preliminary proof should be left to the sound discretion of the court "according to circumstances of each case," and then the attachment goes. There is no difficulty in this view. The attachment gives ample notice by the *scire facias* clause. The defendant comes in under that and shows cause why the judgment of condemnation should not go. This is the usual course in all attachment causes, and is also like the ordinary proceeding *in rem*.

The other special objections to the proceedings in this case cannot be sustained. The service of the writ on the day on which it was returnable was sufficient. 46 *Law Lib.*, 100. 7 *Law Lib.*, 44. 2 *Burr.*, 812, *Maud vs. Barnard.* The

appraisement is entirely aside from the writ, is no part of it, and if it had never been made the attachment would still have been good. 3 *H. & McH.*, 614, *Davidson's Lessee vs. Beatty.* That an attachment may be issued upon an account charging for merchandise as "per bill rendered," was decided in the Superior Court of Baltimore after full argument. But the credits must be applied to the first items in the bill, and then the balance due would be more than enough to cover these proceeds.

Tuck, J., delivered the opinion of this court.

The questions arising on this record relate to the validity of proceedings under the 8th section of the act of 1842, ch. 293, which authorises an attachment against the property of a married woman, trading as a *feme sole*. The appellant claims the property as trustee for the benefit of creditors under a deed executed by the husband and wife.

Several propositions were presented in the court below, and argued here, but as we think that the objection raised by the *third* prayer is fatal to the plaintiff's right to recover, we shall not express any opinion upon the others.

The proceedings under this act are required to be "by attachment from the county court to compel payment, upon petition and proof of claim, according to the circumstances of each case, according to the course of the attachment law." We are of opinion that the provisions of the acts relating to attachments should be observed, as far as the same are not inconsistent with the design and purposes of this act of Assembly. The proceeding and the judgment are *in rem*, and not *in personam*. The object is, not to compel the appearance of the debtor with a view to a judgment against her, nor to seize her property by way of execution, but to obtain a lien on property acquired in a specified manner, with a view to the payment of the claim, if it should appear that the party is indebted as charged. Hence the *capias* under the former, or summons under the present practice, is not necessary. But the act does not deny to the *feme covert*

debtor the right of protecting her estate against claims of this kind. On the contrary, she is entitled to the same means of becoming acquainted with the existence of the proceedings as are secured to other debtors, "according to the course of the attachment laws." It would be a harsh construction to place upon this act to say, that while it professes to encourage the skill, industry and personal labor of married women, by allowing them to hold separate estate thereby acquired, they shall be liable to have it wrested from them by an *ex-parte* proceeding, when all other persons are protected by the very laws according to which the creditor is required to proceed against her. It confers the privilege of trading as a *feme sole*, but, at the same time, her creditor is distinguished above those of other persons, by having the benefit of a summary process by way of attachment and lien, for the recovery of his demand, without the delays and embarrassments attending the ordinary forms of judicial proceedings, and he cannot reasonably complain if his debtor be allowed an opportunity of challenging the justice of his claim. It is manifestly unjust to deprive a party of his property without notice, or what the law declares to be equivalent to notice. An eminent jurist has said, that all judgments rendered anywhere against a party who had no notice of the proceeding, are rendered in violation of the first principles of justice, and are null and void. 2 *Kent*, 109. This right, given in terms to others, is not denied to this party, and cannot be taken away by con- struction.

The filing out of the short note and sending a copy with the attachment, to be put up at the court house door, as a means of notice to the debtor, is indispensable under the act of 1795, ch. 56; *Stone vs. Magruder & Brooke,* 10 *G. & J.,* 383; and we think that it is equally important in cases under the act of 1842. It was said in argument that the *scire facias* clause in the writ of attachment can accomplish all or more than the short note will probably effect. This may be so, but not necessarily, and the same argument might be used, and with greater reason, against the employment of the short

note in attachments against absconding or non-resident debtors, yet the law will not dispense with this means of notice as to them. Again, the sheriff is required to make the writ known, not to the debtor, but to the party in whose hands the attachment may be laid, and this may not be the debtor, but some other person in whose possession her credits or property may be found, and condemnation may be obtained without any knowledge, on her part, of the pendency of the proceedings. As far as this record discloses, if Mrs. Magruder had had no other means of knowledge, the property in this case might have been condemned, notwithstanding this clause in the writ, for it does not appear by the return of the sheriff that she had the benefit of it, either as debtor or as the party in whose possession the property was found.

The objection is not obviated by the fact that the party appeared voluntarily. The want of the short note is fatal to the proceedings. Without it they are *coram non judice* and void. 6 *Gill & Johns.*, 335, *Wever vs. Baltzell.* *Ibid.*, 345, *Bruce vs. Cook.* 10 *Do.*, 386. 5 *H. & J.*, 132.

It is proper to say that we do not agree with the appellant that the property of the debtor cannot be taken *in limine*, but only after petition, answer and proof of the claim. This might—nay probably in most cases would—defeat the very object of the party in suing out the attachment. It is sufficient if the creditor lay a foundation for the writ, by affidavit and the proper voucher, according to the present practice.

As the objection which we have noticed is fatal to the proceedings, the judgment must be reversed without a *procedendo*.

*Judgment reversed and procedendo refused.*