# JACOB CAMPBELL *vs.* FLOYD N. WEBB, HUM-PHREY HICKS and DAVID M. DEITRICK.

A plea, alleging *generally* that property was taken by virtue of an attachment issued by a justice of the peace, must, under the *new system* of pleadings, (*act of* 1856, *ch.* 112, *sub-ch.* 2, *art.* 4, *sec.* 60,) be considered as meaning that the writ was *legally* issued, and is therefore a good plea, though not stating all the facts necessary to show that the justice had jurisdiction to issue the writ.

When issue is joined upon such a plea, the *onus* is cast upon the defendant, of proving not simply the truth of the general allegation, but also of proving every fact necessary to establish the legality of the acts alleged to have been done.

The provision in the act of 1849, ch. 269, requiring a plaintiff in an attachment issued by a justice of the peace, to set up an affidavit to and a copy of his claim, is repealed by the act of 1852, ch. 239, which makes the proceedings in such attachments *similar* to those in the several *circuit courts* of the State.

In case of an attachment issued by a justice of the peace, a *short note* must be filed and a copy sent *with the writ*, to be set up at the court house door, otherwise the proceedings are *coram non* and *void*, and furnish no justification either to the *officer* who executes the writ, or to the *parties* at whose instance it issued.

The officer is always responsible when he executes process by a tribunal of inferior and limited jurisdiction, when such *process shows* that it was *void*, because the tribunal had not jurisdiction over the person or property, though there might have been jurisdiction over the subject if the requirements of the law giving the jurisdiction had been fully complied with.

APPEAL from the Circuit Court for Washington county.

This was an action brought on the 3rd of November 1856, by the appellant against the appellees, to recover damages for

the alleged wrongful taking and detention by the defendants, of certain personal property belonging to the plaintiff. The pleadings are fully stated in the opinion of this court.

At the trial of the issues of facts joined in the case, *two exceptions* were taken by the plaintiff, to the rulings of the court (Perry J.,) which also are fully stated in the opinion of this court. The verdict and judgment were in favor of the defendants, and the plaintiff appealed.

The cause was argued before Le Grand, C. J., Eccleston and Bartol, J.

*R. H. Alvey* for the appellant.

1st. The demurrer interposed by the defendants, brought the whole series of pleadings before the court, whose duty it then became to decide against the first material defect occurring. Such must be the meaning of section 40, art. 1, sub-ch. 2, of the act of 1856, ch. 112. The first defect here was in the *second plea* of the defendants, in not setting out all the circumstances and proceedings necessary to *give jurisdiction* to the justice of the peace. This being a special and limited jurisdiction, it should be shown affirmatively by those seeking to avail themselves of the proceedings, that the law creating and conferring this special jurisdiction, had been fully complied with in every particular. 3 *Cowen*, 206. 9 *Cowen*, 227, *Latham vs. Edgerton.* 19 *Johns.*, 35, *Mills vs. Martin.* But the demurrers should have been overruled. In cases of attachment before a justice of the peace, the whole proceedings are particularly described by statute, and without a full compliance with all the requisites made necessary, the proceedings had are void for want of jurisdiction. 5 *H. & J.*, 132, *Shivers vs. Wilson. Acts of* 1849, *ch.* 269; 1852, *ch.* 239. The case must by the proceedings disclose itself to be within the limited jurisdiction. 6 *G. & J.*, 335, *Wever vs. Baltzell & Davidson.* By the act of 1849, it is provided, that the plaintiff "*at the time of issuing said attachment*, shall set up at least at three of the most public places in the county in which said attachment may issue, at least

ten days before the return day of said attachment, *an affidavit* of the truth of his claim together with a copy thereof.'' And by the act of 1852, it is declared, that ''in all actions of *attachment and replevin,* the proceedings before the justice of the peace, shall be similar to those in the several circuit courts of the State.'' This latter act, therefore, makes it necessary that a *short note* should be filed and a copy thereof *sent with the writ,* to be set up at the court house door. But in this case neither the *affidavit* required by the act of 1849, nor the *short note* made necessary by the act of 1852, was made. The want of either of these rendered the whole proceeding a nullity; the writ of attachment had no validity whatever, and could not be executed; every thing done was *coram non* and void, 10 *G. & J.,* 383, *Stone vs. Magruder, et al.* 6 *Md. Rep.,* 58, *Brent vs. Taylor, et al.* 3 *Louisiana Rep.,* 16, *Lacy vs. Kenley.* 6 *Wheat.,* 119, *Thatcher vs. Powell.* 10 *G. & J.,* 292, *Owings, et al., vs. Worthington.*

2nd. The affidavit made as the foundation of the attachment does not pursue the act of 1849. The proceedings were against the plaintiff as a *non-resident debtor,* and the defendant who made the affidavit, swears ''that he is *credibly informed* and *verily believes* that the said Jacob Campbell is not a citizen of the State, and doth not reside therein.'' The act requires the party to swear or affirm in a *positive form* ''that the said debtor does not reside within the limits of the State of Maryland.'' It makes the affidavit to be as certain and positive in regard to residence as of any other fact—as that of the existence of the debt. The form here used does not follow that prescribed by the act, and the justice, therefore, had no jurisdiction to issue an attachment on such an affidavit. 2 *Strange.,* 993, *Smith vs. Bouchier, et al.* 2 *Wilson,* 385, *Perkin vs. Proctor,* cited in 8 *Md. Rep.,* 43, *Deal vs. Harris.*

3rd. The next question is, assuming the attachment proceedings to be void, as they clearly are, do they afford a protection and justification to the defendants or either of them? I contend they do not. If the proceedings are wholly void as being *coram non,* they are available to no person or purpose,

69      v. 11.

and are to be treated as if never had. If they were merely *voidable* and not *void* then perhaps the officer would be protected, but being *wholly void* neither officer nor any person can justify under them. They are not to be recognised or received as judicial proceedings in any sense or for any purpose whatever. 2 *Wilson*, 380, *Perkin vs. Proctor*. 3 *Barn & Ald.*, 266, *The Margate Pier Company vs. Hannam*. 3 *Man. & Gran.*, 581, *Morrell vs. Martin*. 3 *Cranch.*, 331, *Wise vs. Withers*. 19 *Johns.*, 35, *Mills vs. Martin*. 6 *Wheat.*, 119, *Thatcher vs. Powell*. 1 *Pet.*, 340, *Elliott vs. Piersol*. 1 *Conn.*, 40, 46, *Grumon vs. Raymond*. 5 *Mason.*, 497, *Thurston vs. Martin*. 6 *H. & J.*, 202, *Barney vs. Patterson*. 6 *G. & J.*, 386, *Hall vs. Hall*. 5 *Wend.*, 172, *Savacool vs. Boughton*. 1 *Denio*, 158, *Ford vs. Babcock*. The court below instructed the jury, that these attachment proceedings formed a full justification to *all the defendants*, and that the plaintiff could not recover. In this the court clearly erred. The parties *procuring the proceedings*, according to all the cases and upon every principle, were liable, and could take no shelter under the void process issuing at their own instance. If the proceedings be void, the most that could be contended for is, that the *constable* was protected by the process, appearing legal on its face. But this fact, if such were the fact, I contend under the circumstances of the case, did not exempt the officer from liability, but he is made liable together with the other defendants, because the whole proceedings were *nullities*. The process however, did not appear legal on its face, if I am right in the objection taken to the form of the affidavit. This affidavit, as made, was recited in the writ, and thereby the constable was warned of the illegality of the whole proceeding. He was moreover bound to know at his peril, that *all* the requisites of the statute, one of which, as we have seen, was the *short note*, had been conformed to. 5 *Mason*, 487, *Thurston vs. Martin*.

4th. But if it were conceded, that the attachment proceedings upon their face were valid, still there is another question of importance to be disposed of, and that is, whether it be legal and competent to issue an attachment as against a non-resi-

dent, when, in fact, the party was *present* and within the reach of the ordinary process, and seize and take out of *his possession* property before condemnation and execution? The act of 1849, evidently contemplates the *absence* of the debtor. The attachment process is not legal and proper so long as the ordinary process can be executed. The a*bsence* of the debtor is indispensable to the legality of an attachment against a non-resident. And it would seem equally clear upon every principle, that an attachment could not be executed upon property in the *possession* of the defendant *himself*. Indeed it would follow as a necessary consequence, if the attachment could not legally issue against a debtor present and subject to the ordinary process, that it could not be laid on property in his possession. 3 *H. & McH.*, 615, *Davidson vs. Beatty.* It would be inconsistent with the whole theory of our attachment system, to authorise, by construction, the taking in the first instance, the goods of the defendant out of his own hands and holding them by the officer or parties for an indefinite period. If a law were in existence, clearly authorising such a proceeding, it would be doubtless unconstitutional; for, before property can be interfered with, there must be judgment and execution. With a view to judgment of condemnation and execution thereon, the officer, under the attachment, is simply authorised to schedule and describe the property, and return in whose hands it is, and if in no person's possession, to return the fact accordingly, that the particular property may be condemned and execution go against it specifically. 6 *H. & J.*, 182, *Barney vs Patterson.*

*A. K. Syester* and *William T. Hamilton,* for the appellees:

1st. The decision of this case will depend, mainly, on the question of the jurisdiction of the justice before whom the proceedings in attachment took place. The writ of attachment for a debt due from a non-resident, and under $50, is expressly authorised by the act of 1849, ch. 269, to be issued by a justice of the peace. The proceedings, in this case, before the justice, disclose a case which invests him with jurisdiction over the process. The debt was under $50. The

*affidavit* was made, stating the indebtedness of the party, and his non-residence. The evidence of indebtedness was produced, and it was therefore *lawful* for the justice to issue an attachment. To set up a *short note,* or an *affidavit* of the truth of the claim with a copy thereof, was not a step necessary to invest the justice with jurisdiction; that, under the act of Assembly, is to be done by the plaintiff in attachment at the same time the attachment issues. But the process of attachment rightly issued without the short note. The pleas state the property to have been taken under and by virtue of this process of attachment, and the question is, had the justice jurisdiction over that process? The process on its face, shows a case within the jurisdiction of the justice, and the *ministerial officer* is therefore clearly protected. 10 *Johns.,* 138, *Warner vs. Shed.* 10 *Vermont,* 153, *Darling vs. Bowen.* 1 *Denio,* 158, *Ford vs. Babcock.* 5 *Wend.,* 170, *Savacool vs. Boughton.* 2 *Term Rep.,* 653, *Ladbroke vs. Crickett.* 2 *Strange.,* 710, *Hill vs. Bateman.* 1 *Chitty's Pl.,* 182. 12 *Wend.,* 96, *Purmille vs. Hitchcock.* *Wille's Rep.,* 37, *Moravia vs. Sloper.* 6 *G. & J.,* 386, *Hall vs. Hall.*

2nd. The justice had jurisdiction not only over the *process* but also over the *case.* The title and preamble to the act of 1849, both speak of jurisdiction over *cases* of attachment, by single justices of the peace. The debt did not exceed $50; the debtor is a non-resident. An affidavit of the truth and amount of the claim and of non-residence, are before him. Do not these present him a *case* within his jurisdiction? If the case, or the process, or both, are within the jurisdiction, the proceedings are *coram judice,* and mere defects in subsequent proceedings will not render those that are clearly regular *coram non judice.* Here both the process and case are within the jurisdiction, and therefore the proceedings afford protection *to the parties.* 1 *Adol. & Ellis,* in 41 *Eng. C. L. Rep.,* 417, *Carratt vs. Morley.* 3 *B. Monroe,* 80, *Banta vs. Reynolds.*

3rd. By the act of 1852, ch. 239, sec. 2, the proceedings in attachments before justices of the peace, shall be similar to those in the several circuit courts of the State. The affidavit

in this case being part of the proceedings, is in conformity with the act of 1795, ch. 56, sec. 1, and being so, invested the justice with jurisdiction over the process and the case, and having jurisdiction, the plaintiff in attachment cannot be held responsible for subsequent defects and omissions, without putting in peril the rights and interests of every man, who seeks to recover his debt by such an attachment. This case, therefore, is one of immense practical account to the entire system of law, relative to the recovery of small debts, in attachments before magistrates.

ECCLESTON, J., delivered the opinion of this court.

This suit was instituted by the appellant against F. N. Webb, H. Hicks and D. M. Deitrick, for taking a mare, wagon and harness, from the possession of the appellant, he being the owner of the property; which suit commenced on the 3rd of November 1856.

The defendants severed in their pleadings.

Webb filed two pleas. *First.* That he did not commit the wrong. *Second.* That he took the property mentioned in the declaration, under and by virtue of an attachment issued by James W. Leggett, a justice of the peace, duly commissioned and qualified, directed to him (Webb) as a constable.

Hicks also filed two pleas. *First.* That he did not commit the wrong. *Second.* That at the time of the alleged trespass, he was one of the administrators of George W. Lahn, deceased, and the plaintiff being indebted to the said Lahn, and the plaintiff not being a citizen of the State of Maryland, and not residing therein, he the defendant exhibited to James W. Leggett, a justice of the peace in and for Washington county, duly commissioned and qualified, the account on and by which the plaintiff was indebted, as aforesaid, to the said Lahn; and at the same time he, the defendant, made oath before Leggett, the justice, as required by law, to obtain a writ of attachment, commonly called a foreign attachment, against the goods and chattels of the said plaintiff, whereupon a writ of attachment commonly called a foreign attachment, was issued by the said justice, and directed to Floyd N. Webb, a

constable of said county, who by virtue of the same levied upon and seized the goods and chattels mentioned in the de- claration, being the goods and chattels of the plaintiff.

Deitrick, the third defendant, filed two pleas similar to those filed by Hicks.

The plaintiff took issue on the first pleas of the defendants, and filed six replications; which it was agreed should be considered as applying to the second plea of each defendant.

The first four replications were traversed, and issues were joined upon them. The 5th and 6th replications were demurred to.

No causes of demurrer are particularly expressed, as required by the act of 1856, ch. 112, sub-ch. 2, art. 1, sec. 37. We learn however, that under the agreements filed in the cause, it was the understanding of counsel, that notwithstanding the form of the demurrer, it should have the same effect as if the causes of demurrer had been specified, according to the provisions of the statute.

The 5th replication is, "that the plaintiff in the said attachment proceedings, did not at the time of suing said attachment, set up at three of the most public places in the county, at least ten days before the return day of said attachment, an affidavit of the truth of their claim, upon which the said attachment issued, together with a copy thereof, as required by law."

The 6th replication is, "that at the time of issuing the said attachment, the plaintiffs in the said attachment proceedings, did not file a short note to be sent out with the said writ of attachment, to be set up at the court house door."

The demurrer to these replications, was sustained by the court below. Whether in so doing the court decided erroneously, is a question presented by this appeal.

The appellant contends, that even conceding his replications did not entitle him to a judgment upon the demurrer, yet the judgment should have been in his favor, because of defects in the second plea of each defendant.

In support of this position, he refers to sub-ch. 2, art. 1, sec. 40, of the act of 1856, where it is said: "When issue is

joined on demurrer, at any stage of the cause, the court shall consider the allegations through the whole series of pleadings, and give judgment according, as the very right of the cause and matter in law shall appear unto it, without regarding any imperfection, omission, defect in, or lack of form, for the party who on the whole appears to be entitled to it. And no judgment shall be arrested, stayed or reversed, for any such imperfection, omission, defect in, or lack of form."

The appellant says, the second pleas are defective, because they set up a justification for taking the property in dispute, under an attachment issued by a justice of the peace, without setting forth all such facts as were necessary, to show that the justice had jurisdiction and authority to issue the writ.

Inasmuch as a justice has only an inferior and limited jurisdiction, it is contended, that a plea of justification cannot be a valid defense, when based upon such a writ as the one in question, unless the plea shows that the writ was issued, under circumstances which gave the justice jurisdiction. Such an objection to the pleas before us might have been a valid one, under the old system of pleading, inasmuch as the pleas do not contain statements of all the facts necessary to constitute legal justification. But the act of 1856 has made an important change in this respect.

The 60th section, of sub-chapter 2, article 4, provides, that "Where in a pleading, any thing is alleged generally to have been done, it shall be considered as meaning legally done, and by the proper instrument of writing, where one is required, without stating how or in what manner it was done."

The pleas *allege generally*, that the property was taken under and by virtue of a writ of attachment, issued by a justice of the peace of Washington county, and directed to Webb as a constable. By our laws, justices of the peace have authority to issue attachments, in certain cases. And under the new system of pleading, the general allegations here made, that the property was taken by virtue of an attachment, issued by a justice of the peace, must be considered as meaning that the writ was legally issued. The pleas are therefore to be understood as alleging, that everything was done which was neces-

Campbell *vs.* Webb, *et al.*

sary to render the attachment a legal and valid proceeding. And when issues are taken on such pleas, the *onus* is cast upon the defendants, of proving not simply the truth of the general allegations, but also of proving every fact necessary to establish the legality of the acts alleged to have been done. A failure to do so, in any respect, may be taken advantage of by the opposite party, by asking an instruction from the court in regard to the proof.

Looking at the pleas in the aspect stated, we do not think the plaintiff was entitled to a judgment upon the demurrer, on account of errors in the second pleas.

The demurrer with reference to the 5th replication, was correctly decided in favor of the defendants. To sustain that replication would be to affirm that the attachment was illegal and void, because the plaintiffs in the attachment did not at the time it was issued, set up at three of the most public pla- ces in the county, at least ten days before the return day thereof, an affidavit of the truth of their claim, upon which the attachment issued, together with a copy thereof. It is true, that the act of 1849, ch. 269, would seem to require such a notice should be given; but in our opinion this has been dis- pensed with, by the act of 1852, ch. 239, sec. 2. It is pro- vided in the latter act, that "in all actions of replevin and *at- tachment*, the proceedings before the justice of the peace, shall be similar to those in the several circuit courts of the State." The notice prescribed in the act of 1849, is not required in any part of the proceedings in attachment in the circuit courts. In those cases, it is made necessary by the act of 1795, ch. 56, that a short note should be filed and a copy thereof sent with the writ, to be set up at the court house door by the sheriff.

This notice, by means of a copy of the short note being re- quired, by virtue of the provisions in the act of 1852, must be considered as a virtual repeal of the notice prescribed in the previous act of 1849.

The 6th replication alleges, that at the time of issuing the attachment, there was not filed a short note to be sent out with the writ, to be set up at the court house door. That the filing

of such a paper was necessary, will appear from what has been already said, with reference to the acts of 1852 and 1795.

In *Stone vs. Magruder*, 10 *G. & J.*, 385, the court say: "The act of Assembly of 1795, ch. 56, in its *third* section declares, that upon the issuing of every attachment, there shall be *therewith* issued, a writ of *capias ad respondendum*, against the defendant, and a declaration or short note, expressing the plaintiff's cause of action, shall *moreover be filed* and *a copy thereof sent with the writ*, to be set up at the court house door by the sheriff."

"By the plain and obvious construction of this section, the attachment *per se* would have no validity; it must always be attended with a *capias* and *short note*. In the language of the law, the *capias* is to be issued therewith, and a copy of the short note is to be sent with the *capias*."

In *Brent vs. Taylor & Marks*, 6 *Md. Rep.*, 70, which was the case of an attachment against a married woman, under the act of 1842, ch. 293, the court say: "The want of the short note is fatal to the proceedings. Without it they are *coram non judice* and void." And several Maryland decisions on the subject, are referred to in support of the views of the court. See also 6 *G. & J.*, 348. 1 *Gill*, 379, 381, 382 and 383.

It has been contended, that the attachment is a justification to Webb, the constable, if not to the other defendants. Let us examine whether this is true.

In reference to tribunals of *limited jurisdiction*, many cases are to be found which state it as a general principle, that if an inferior court exceeds its jurisdiction, its proceedings are void, and afford no protection to the *party*, or to the *officer* who has executed its process.

The authorities however, are somewhat in conflict as to the cases in which a ministerial officer will or will not be protected. *Perkin vs. Proctor*, 2 *Wilson*, 380. *The Margate Pier Co. vs. Hannam*, 3 *Barn. & Ald.*, 266. (5 *Eng. C. L. Rep.*, 278.) *Morrell vs. Martin*, 3 *Man. & Gran.*, 581. (42 *Eng. C. L. Rep.*, 305.) *Wise vs. Withers*, 3 *Cranch.*, 331. *Mills vs. Martin*, 19 *Johns.*, 35. *Thatcher vs. Powell*, 6 *Wheat.*,

61    v. 11

119. *Ellicott vs. Piersol*, 1 *Peters*, 340. *Thurston vs. Martin*, 5 *Mason*, 497. 6 *H. & J.*, 202. 1 *Adol. & Ellis*, in (41 *Eng. C. L. Rep.*, top *p.* 417.) 2 *Strange.*, 710. 10 *Johns.*, 138. 10 *Vermont*, 153. 1 *Denio*, 158. 5 *Wend.*, 170. 3 *B. Munroe*, 80. 2 *Term Rep.*, 653. But it seems to be well settled, that the officer is responsible, when he executes process issued by a tribunal having inferior limited jurisdiction, if the process shows that it is void, because the tribunal has not jurisdiction over the person or property to be affected in the case, although there might have been jurisdiction over the subject, if the requirements of the law had been fully complied with.

In *Grumon vs. Raymond*, 1 *Conn. Rep.*, 47 and 48, it is said: "Although an officer is not always liable when he executes an improper warrant, yet this is in a case where it does not appear on the face of the warrant that it is illegal. It may, for any thing that the officer can discover, be legal; and in such case it is his duty to obey, and to presume that it is lawful. But an officer is bound to know the law; and when the warrant, on the face of it appears to be illegal, and he executes it, he is liable to the person arrested."

The replication alleges there was no short note; and, of course, the demurrer admits the truth of the allegation. If there was none, Webb, the officer, knew it, for if a short note had been sent with the writ, the law made it his duty to set it up at the court house door; he moreover, was bound to know that the attachment had no validity without the short note. Being thus necessarily apprized of the fact, that the process was defective and void, he could not justify taking the property of the plaintiff under it. And if the attachment was no justification to him, it could be none to the other defendants, at whose instance the process issued, and who failed to file the short note which they were required by law to do. The 6th replication to each second plea, was therefore a sufficient reply to the alleged justification, and should have been sustained by the judgment of the court upon demurrer.

At the trial of the issues in fact, two bills of exceptions were taken by the plaintiff. The first presented a question, as to the

Campbell *vs.* Webb, *et al.*

admissibility of evidence, and the second was, in regard to de-cisions by the court upon prayers of the plaintiff.

It was proved by the plaintiff that in October 1856, he be-ing then a citizen and resident of the State of Virginia, was with his family in Washington county; that he had then and there with him a horse or mare, and a spring wagon used as a conveyance for his family, his family being at the time on a visit to the father of the plaintiff's wife. That the defendant Webb, under the direction of the other defendants, seized and took out of the possession of the plaintiff his said horse or mare and spring wagon and wagon gears. That the property so taken, was taken to the premises of Hicks, one of the defend-ants, and there detained by the defendants and each of them, against the plaintiff; who also proved damage, sustained by reason of such taking and detention.

The defendants then offered to read to the jury the attach-ment papers, consisting only of an account, an affidavit by Hicks, one of the administrators of Lahn, an attachment with a return thereon, and the judgment rendered on the return day, the 12th of November 1856. To the admissibility of these attachment proceedings, thus offered, the plaintiff ob-jected, but the court overruled the objection, and permitted the same to be read to the jury. To which ruling of the court the plaintiff excepted.

From the second bill of exceptions, it appears that the de-fendants further gave in evidence, that the goods and chattels taken out of the possession of the plaintiff, and mentioned in the declaration, were taken by Webb, the constable, under the said attachment proceedings, and that the goods and chattels were held under the said writ of attachment against the plain-tiff. And the plaintiff then proved, that there was no affidavit made by the plaintiffs in the attachment proceedings, other than the one appearing in the proceedings; that there was no such affidavit, or copy thereof, set up, as required by the act of Assembly; and that the plaintiffs in the attachment proceed-ings *did not file a short note in the said proceedings,* to be set up at the court house door.

The plaintiff, the present appellant, then asked the court to give the three following instructions to the jury:

"1st. That the said attachment proceedings, given in evidence as aforesaid, are void, and do not show and afford sufficient justification to either of the defendants in this cause, for taking or interfering with the property in question, if the jury believe that such property was taken or interfered with by the defendants, while in possession of the plaintiff.

"2nd. That the said attachment proceedings, given in evidence as aforesaid, are, upon their face, void, and would be insufficient to justify an officer in the execution of the said writ of attachment.

"3rd. That the defendants' second plea, as severally pleaded by them, is insufficient in law, and that the matters and things therein set forth, form no sufficient justification to the said defendants, or either of them, in this case, as an answer to the action."

The court refused to grant the prayers, or either of them, but was of opinion, and so instructed the jury, that the said attachment proceedings were a sufficient justification to the defendants, and that the plaintiff was not entitled to recover. To which opinion and refusal of the court to grant the prayers, the plaintiff excepted.

It has been supposed, that because an account, with an affidavit thereon, was found among the attachment papers, there was no necessity for filing a short note, and sending a copy of the same with the writ. But this is not a correct supposition. The 1st section of the act of 1795, provides, that *at the time* of making application for a warrant for an attachment, the party is to make oath "that the debtor is *bona fide* indebted to him, or her, in the sum of ——, over and above all discounts, and, at the same time, is to produce the bond or bonds, bill or bills, protested bill or bills of exchange, promissory note or notes, or other instrument or instruments of writing, account or accounts, by which the said debtor is so indebted." And the 3rd section contains the provision mentioned in *Stone vs. Magruder & Brooks*, with regard to the indispensable necessity for issuing a *capias* and filing a short note, expressing the

Campbell *vs.* Webb, *et al.*

plaintiff's cause of action, and sending a copy thereof with the writ, at the time of issuing an attachment.

In the statement of that case, by the reporters, it appears, that on the 8th of May 1837, "the plaintiffs filed an affidavit of their debt, &c., and a warrant of attachment was issued on the same day, by the clerk of Prince George's county court. On the 28th of June 1837, a writ of *capias ad respondendum* and short note of the plaintiffs' claim, were issued and sent to the sheriff."

Upon an examination of the original record, we find that the claim of the plaintiffs was a judgment in the circuit court of the District of Columbia. A copy of the record of which judgment was annexed to the affidavit filed by the plaintiffs, on the 8th of May 1837. And, notwithstanding this, the court held the attachment to be *invalid*, because the *capias* was not issued, and the short note was not filed, and a copy thereof sent, until some time subsequently to the issuing of the attachment.

What has been said is deemed sufficient to show that the first and second prayers of the plaintiff should not have been rejected by the court.

It is rather doubtful whether what is stated as the *third* prayer, should be considered a demurrer to the second pleas, or as a prayer. In neither aspect, however, can it be sustained. It is based upon the assumption that those pleas are insufficient in law, and that the matters and things therein set forth, form no sufficient justification to the defendants, in answer to the action. But we have said the general allegations in the pleas, in regard to the issuing of the attachment, are to be considered as meaning that the writ was legally issued. And if so considered, the matters and things alleged, or set forth, would amount to sufficient justification.

Believing, as we do, that a want of the short note rendered the attachment *void*, we must say the court did wrong in expressing the opinion and instructing the jury "that the said attachment proceedings were a sufficient justification to the defendants, and that the plaintiff was not entitled to recover."

The views which have been stated, render it unimportant

whether the court decided correctly or not, in permitting the attachment papers to be read in evidence to the jury.

The judgment on demurrer, in regard to the 5th replication, is affirmed, but reversed in relation to the 6th. We reverse on the *first* and *second* prayers, and affirm on the *third*. We also reverse for error in the opinion of the court and instruction given to the jury.

*Judgment reversed, and procedendo awarded.*